JOURNAL ENTRY AND OPINION
{¶ 1} Appellant appeals her conviction for felonious assault, pursuant to R.C. 2903.11, and two counts of endangering children, pursuant to R.C. 2919.22(A) and (B)(2), and her sentence in the Cuyahoga County Court of Common Pleas, General Division. After reviewing the record and the arguments of the parties, we affirm the trial court's decision for the reasons set forth below.
 {¶ 2} Appellant's conviction and sentence result from a jury trial that commenced on January 23, 2003. A previous trial was begun on November 12, 2002; a mistrial was declared in that case on November 21, 2002 when the jury was unable to reach a verdict.
 {¶ 3} Appellant was indicted for the above-referenced crimes on September 30, 2002. The victim of appellant's crimes was her daughter, one of her six children, who was ten years old at the time of trial ("the child" or "the child victim".) The child testified that on or about July 13, 2002,[1] appellant whipped her with an extension cord for failing to properly clean up the house. The beating caused noticeable injury to the child's eye and lip, including bleeding and a discharge from the pupil, but appellant sought no immediate medical treatment for her daughter. The child testified that she has not been able to see out of that eye since the beating and that she had informed appellant and a maternal aunt immediately after the incident that she could not see. After the beating, the child was taken to the residence of appellant's sister, Stephanie Jackson, and she remained there for an extended period of time. The appellant failed to even visit the child until "a couple days later." (Tr. 196.) Both the maternal aunt and a maternal cousin noticed the injury to the child's eye, but they did not seek medical attention for her.
 {¶ 4} Dr. Scott Smith of the ophthalmology department at the Cleveland Clinic treated the child victim when she was finally taken to the hospital on July 17, 2002. Trial testimony indicates that the child was only taken to the hospital once the injury to her lip had healed, and she was instructed by appellant to say that she injured her eye "jumping rope" with an extension cord. (Tr. 197.) Dr. Scott operated on her immediately to relieve the internal pressure in the eye caused by bleeding, but it was too late to save her vision. He further testified that, had the child received medical treatment within 48 hours of the injury, her vision could likely have been saved.
 {¶ 5} The child's two siblings, a 14-year-old sister and an 11-year-old brother, also testified; they corroborated the events of the day in question as testified to by the child. The brother even testified that appellant hit the child's eye on purpose, but then stated that it may have been an accident. The oldest child testified that appellant first beat the brother and then chased the child victim from room to room, whipping her with the extension cord. She also remembers appellant striking the child victim in the face with a closed fist, which caused the injury to her lip. All three of appellant's children who testified were able to demonstrate the way the appellant held the extension cord, how she went about striking the child victim, and the location in the home where the beating took place.
 {¶ 6} Other witnesses for the State included social worker Erica Jenkins, maternal relatives Stephanie Jackson and S.J.,[2] and Detective James Butler. Stephanie Jackson and S.J. testified that they remembered nothing about the injury to the child, even though the child testified that Stephanie Jackson supplied her with ice for her eye and "some pills" immediately following the injury. Stephanie Jackson and S.J. had both testified in the previous trial that they were aware of the injury to the child's eye and could describe it in detail.
 {¶ 7} At the close of the State's case, the defense moved for a judgment of acquittal, which was denied. Appellant offered no witnesses on her own behalf. She was found guilty on all counts and sentenced to four years on count one and three years on count two, to be served concurrently, and four years on count three, which sentence would be served consecutive to the sentence for counts one and two.
 {¶ 8} Appellant now offers eight assignments of error for our review:
 {¶ 9} "I. The trial court erred by not instructing the jury that it must unanimously conclude that appellant committed acts falling within one specific section of felonious assault in order to reach a guilty verdict."
 {¶ 10} "II. The trial court denied appellant due process of law by failing to dismiss the charges of felonious assault and endangering children because of the insufficiency of the state's evidence."
 {¶ 11} "III. The verdicts finding appellant guilty of felonious assault and endangering children are against the manifest weight of the evidence."
 {¶ 12} "IV. Appellant was denied effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution."
 {¶ 13} "V. The trial court erred by failing to instruct the jury regarding the proper use of testimony and trial counsel was ineffective in failing to request such an instruction."
 {¶ 14} "VI. The trial court erred when it failed to instruct the jury as to permissible corporal punishment and trial counsel was ineffective in failing to request such an instruction."
 {¶ 15} "VII. The trial court committed prejudicial error by making improper comments upon the credibility of testimony."
 {¶ 16} "VIII. The trial court erred in permitting one witness to comment on the testimony of another witness and thereby entered the contents of statement without entering the statements themselves."
 Unanimity of the Jury {¶ 17} We review the first assignment of error for plain error because trial counsel failed to object to any jury instruction. To constitute plain error, the error must be on the record, palpable, and fundamental, so that it should have been apparent to the trial court without objection. See State v.Tichon (1995), 102 Ohio App.3d 758, 767, 658 N.E.2d 16. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions.State v. Waddell (1996), 75 Ohio St.3d 163, 166,661 N.E.2d 1043; State v. Nolling, 98 Ohio St.3d 44, 2002-Ohio-7044,781 N.E.2d 88. Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. State v. Phillips (1995),74 Ohio St.3d 72, 83, 656 N.E.2d 643.
 {¶ 18} This court recently addressed the issue of jury unanimity in State v. Mercer, Cuyahoga App. No. 81923, 2003-Ohio-3530. "The prevailing rule in Ohio is that a general unanimity instruction * * * will ensure that the jury is unanimous on the factual basis for a conviction even where the indictment alleges numerous factual bases for liability. Statev. Johnson (1989), 46 Ohio St.3d 96, 105. Moreover, it is presumed that `when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive * * *, the verdict stands if the evidence is sufficient with respect to any one of the acts charged.' Id., quoting Turner v. United States
(1970), 396 U.S. 398, 420." Mercer, at 6.
 {¶ 19} Appellant argues that the jury should have been instructed that it must unanimously find her guilty of felonious assault, either with or without a deadly weapon. We disagree. The facts of this case are analogous to those in State v. Chappell,
Cuyahoga App. No. 79589, 2002-Ohio-676. There, a conviction for felonious assault was affirmed where "evidence presented through the state's witnesses' testimony was sufficient to support a finding that the serious harm was caused by the defendant" and "the evidence was sufficient to support a finding of guilt under either section of R.C. 2903.11." Chappell at 12. Similarly, the evidence presented in this case was sufficient, as discussed below, to find the appellant guilty of felonious assault under either applicable code section, and the trial court did not err by failing to issue separate instructions. Appellant's first assignment of error is overruled.
 Insufficiency of Evidence {¶ 20} Appellant alleges in her second assignment of error that the State's evidence was insufficient to sustain a verdict of guilty on all counts. In State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court re-examined the standard of review to be applied by an appellate court when reviewing a claim of insufficient evidence:
 {¶ 21} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia [1979], 443 U.S. 307, followed.)" Id. at ¶ 2 of the syllabus.
 {¶ 22} More recently, in State v. Thompkins (1997),78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, the Ohio Supreme Court stated the following with regard to "sufficiency" as opposed to "manifest weight" of the evidence:
 {¶ 23} "With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955),162 Ohio St. 486. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbsv. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, 2220,72 L.Ed.2d 652, 663, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560." Id. at 386-387. A judgment will not be reversed upon insufficient or conflicting evidence if it is supported by competent credible evidence which goes to all the essential elements of the case. Cohen v. Lamko (1984),10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 24} As mentioned above, appellant was charged with felonious assault, which is defined as "knowingly caus[ing] serious physical harm to another," pursuant to R.C. 2903.11. Further, the State must prove that the appellant was the parent of the child victim and that she caused a substantial risk to the health and safety of the child and/or that the appellant tortured or cruelly abused the child. R.C. 2919.22(A), 2919.22(B)(2). Reviewing the facts of this case in the light most favorable to the prosecution, we find that there exists sufficient evidence to sustain the trial court's verdict on both counts. The record is replete with evidence that appellant caused serious physical harm to the child victim; indeed, neither party challenged the medical evidence as to the nature and extent of the child's injuries. Further, a rational jury could have found that the appellant acted knowingly and/or recklessly. It is more than foreseeable that when an enraged adult chases a small child throughout the house, wielding an extension cord as a whip and intending to hit the child with it, serious injury will most likely occur. There is competent, credible evidence that appellant's actions met the elements of felonious assault and endangering children, and it is clear from the evidence presented that the child's injuries were not accidental. Appellant's second assignment of error is hereby overruled.
 Manifest Weight of Evidence {¶ 25} The standard employed when reviewing a claim based upon the weight of the evidence is not the same standard to be used when considering a claim based upon the sufficiency of the evidence. The United States Supreme Court recognized these distinctions in Tibbs v. Florida (1982), 457 U.S. 31,107 S.Ct. 2211, 72 L.Ed.2d 652, in which the court held that unlike a reversal based upon the insufficiency of the evidence, an appellate court's disagreement with the jurors' weighing of the evidence does not require special deference accorded verdicts of acquittal, i.e., invocation of the double jeopardy clause as a bar to relitigation. Id. at 43.
 {¶ 26} Upon application of the standards enunciated inTibbs, the court in State v. Martin (1983),20 Ohio App.3d 172,175, 485 N.E.2d 717, has set forth the proper test to be utilized when addressing the issue of manifest weight of the evidence. The Martin court stated:
 {¶ 27} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."
 {¶ 28} In determining whether a judgment of conviction is against the manifest weight of the evidence, this court inState v. Wilson (June 9, 1994), Cuyahoga App. Nos. 64442 and 64443, adopted the guidelines set forth in State v. Mattison
(1985), 23 Ohio App.3d 10, syllabus, 490 N.E.2d 926. These factors, which this court noted are in no way exhaustive, include: "1) Knowledge that even a reviewing court is not required to accept the incredible as true; 2) Whether evidence is uncontradicted; 3) Whether a witness was impeached; 4) Attention to what was not proved; 5) The certainty of the evidence; 6) The reliability of the evidence; 7) The extent to which a witness may have a personal interest to advance or defend their testimony; and 8) The extent to which the evidence is vague, uncertain, conflicting or fragmentary." Id.; See State v. Moore, Cuyahoga App. No. 81876, 2003-Ohio-3526.
 {¶ 29} The jury did not lose its way in the case at bar. The child victim testified as follows:
 {¶ 30} "Q. * * * who hit you with the extension cord?
 {¶ 31} "A. My — my mommy.
 {¶ 32} "* * *
 {¶ 33} "Q. * * * why were you hit with the extension cord, if you know?
 {¶ 34} "A. I guess, `cause I didn't clean up the house. (Tr. 194.)
 {¶ 35} "* * *
 {¶ 36} "Q. * * * what happened immediately after you were hit in the eye?
 {¶ 37} "A. I had to clean up. (Tr. 195.)
 {¶ 38} "* * *
 {¶ 39} "Q. Okay. When did you stop being able to see out of the eye?
 {¶ 40} "A. When I got hit in it.
 {¶ 41} "Q. Okay. And you haven't seen out of the eye since?
 {¶ 42} "A. Nope." (Tr. 196.)
 {¶ 43} The child victim's two siblings corroborated this testimony, as did her cousin, S.J. Expert testimony was provided by the child's treating physician, who indicated that the damage to her eye was permanent because of the delay in obtaining medical attention. The trier of fact could have reasonably concluded from this evidence that the State had proved its case beyond a reasonable doubt, and we find that the verdict is not contrary to the manifest weight of the evidence. Appellant's third assignment of error is overruled.
 Jury Instructions and Ineffective Assistance of Counsel {¶ 44} We next review assignments of error four, five and six for plain error, because defense counsel offered no objections at the trial level. Generally, it is the duty of the trial judge in a jury trial to state all matters of law necessary for the information of the jury in giving its verdict. R.C. 2945.11. Correct and pertinent requests to charge the jury must be given by the trial judge, either as specifically proposed or within the substance of a general charge. State v. Perryman (1976),49 Ohio St.2d 14, 3 O.O.3d 8, 358 N.E.2d 1040.
 {¶ 45} A defective jury instruction does not rise to the level of plain error unless it can be shown that the outcome of the trial would clearly have been different but for the alleged error. State v. Campbell (1994), 69 Ohio St.3d 38,630 N.E.2d 339; Cleveland v. Buckley (1990), 67 Ohio App.3d 799,588 N.E.2d 912. In addition, the plain error rule is to be applied with the utmost caution and invoked only under exceptional circumstances in order to prevent a manifest miscarriage of justice. State v. Copperrider (1983), 4 Ohio St.3d 226,448 N.E.2d 452. Moreover, a single challenged jury instruction may not be reviewed piecemeal or in isolation, but must be reviewed within the context of the entire charge. See, State v. Hardy
(1971), 28 Ohio St.2d 89, 276 N.E.2d 247; State v. Fields
(1984), 13 Ohio App.3d 433, 469 N.E.2d 939.
 {¶ 46} Appellant alleges in assignments of error four, five and six that trial counsel was ineffective for failing to request jury instructions as to the proper use of trial testimony and as to "permissible corporal punishment," and that the trial court erred in failing to issue such instructions. In order to substantiate a claim of ineffective assistance of counsel, the appellant is required to demonstrate that: 1) the performance of defense counsel was seriously flawed and deficient; and 2) the result of the appellant's trial or legal proceeding would have been different had defense counsel provided proper representation. Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Brooks (1986),25 Ohio St.3d 144, 495 N.E.2d 407.
 {¶ 47} In reviewing a claim of ineffective assistance of counsel, it must be presumed that a properly licensed attorney executes his legal duty in an ethical and competent manner.State v. Smith (1985), 17 Ohio St.3d 98, 477 N.E.2d 1128;Vaughn v. Maxwell (1965), 2 Ohio St.2d 299, 209 N.E.2d 164. The Supreme Court of Ohio, with regard to the issue of ineffective assistance of counsel, held in State v. Bradley (1989),42 Ohio St.3d 136, 583 N.E.2d 373:
 {¶ 48} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether the defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." State v. Lytle
(1976), 48 Ohio St.2d 391, 396-397, 2 O.O.3d 495, 498,358 N.E.2d 623, 627, vacated in part on other grounds (1978), 438 U.S. 910. This standard is essentially the same as the one enunciated by the United States Supreme Court in Strickland:
 {¶ 49} "Even assuming that counsel's performance was ineffective, this is not sufficient to warrant reversal of a conviction. `An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. Cf. United States v. Morrison, 449 U.S. 361, 364-365 (1981).'Strickland, supra, at 691. To warrant reversal, `[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'Strickland, supra, at 694. In adopting this standard, it is important to note that the court specifically rejected lesser standards for demonstrating prejudice. * * *.
 {¶ 50} "Accordingly, to show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley, supra, at 141, 142.
 {¶ 51} Therefore, we must first determine whether the jury charge issued by the trial court was in error and prejudicial to the appellant. Appellant first argues that counsel was ineffective for failing to request a separate jury instruction on the proper use of trial testimony. Upon review of the jury charge in its entirety, it appears that the trial court issued adequate instructions regarding the use of trial testimony and the inferences which may or may not be drawn from it. Further, appellant cites to no authority which would require the trial court to give a special instruction regarding the reading of prior testimony into the record pursuant to Evid.R. 801(D)(1)(a). We find no error in the jury charge as given by the trial court.
 {¶ 52} Appellant also avers that a jury instruction should have been issued as to "permissible corporal punishment." Appellant was indicted for child endangering under two sections of R.C. 2919.22. R.C. 2919.22(A) states in pertinent part: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *."
 {¶ 53} Appellant was also charged with torturing or cruelly abusing the child, in violation of R.C. 2919.22(B)(2), which states: "No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age: * * * (2) Torture or cruelly abuse the child * * *." The Ohio Supreme Court has held that the culpable mental state of recklessness is an essential element of endangering children under R.C. 2919.22(A). State v. McGee
(1997), 79 Ohio St.3d 193, syllabus, 680 N.E.2d 975.
 {¶ 54} The trial court was not required to issue a specific instruction regarding corporal punishment; the trial judge correctly instructed the jury on the elements of felonious assault (Tr. 490) and child endangering, as charged (Tr. 495, 6). The terms "serious physical harm," (Tr. 491-2) "deadly weapon," (Tr. 493) "attempt," (Tr. 492) "knowingly," (Tr. 489) "accidental," (Tr. 494) "recklessly," (Tr. 497) "abuse," (Tr. 496) and "substantial risk" (Tr. 496-7) were correctly and adequately defined during the jury charge. The jury was further instructed on the use of direct and indirect evidence, inference, weight of testimony and expert witness testimony. Moreover, this court would be hard pressed to second-guess a jury which concluded that a parent rendering her eight-year-old child partially blind "because [she] didn't clean up the house" is not within the realm of "permissible" corporal punishment. Clearly, as discussed above, a trier of fact could reasonably conclude from the evidence presented and from the instructions given that this was not a case of spanking gone wrong. The jury received complete instructions during the course of the trial; there is nothing in the record to indicate that the jury was confused or misled. See State v. Hawkins (Sept. 7, 1988), Wayne App. No. 2356. Therefore, we find no error in the trial court's jury instructions, nor do we find that the appellant was prejudiced by the court's failure to issue an instruction specific to corporal punishment.
 {¶ 55} Because we have determined that there was no error in the court's jury instructions as given, we therefore find that defense counsel's failure to request further instructions had no effect on the outcome of the trial. Defense counsel's performance in this matter was neither flawed nor deficient. Accordingly, appellant's assignments of error four, five and six are hereby overruled.
 Trial Testimony {¶ 56} Appellant argues that the trial court committed prejudicial error in two ways: first, by making "improper comments upon the credibility of testimony" and, second, by allowing one witness to "comment on the testimony of another witness."
 {¶ 57} These arguments focus on the prior inconsistent statements of two prosecution witnesses. The first step in the analysis then is to determine whether these statements are properly admissible. Evid.R. 801(D) states in pertinent part:
 {¶ 58} "A statement is not hearsay if:
 {¶ 59} "Prior statement by witness: The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (a) inconsistent with his testimony, and was given under oath subject to cross-examination by the party against whom the statement is offered and subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition * * *."
 {¶ 60} Further, Evid.R. 607(A) identifies who may impeach a witness:
 {¶ 61} "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage. This exception does not apply to statements admitted pursuant to Evid.R. 801(D)(1)(a) * * *."
 {¶ 62} Therefore, where a prior statement was made under oath and in an adversary proceeding, it is admissible for its truth.State v. Riggins (1986), 35 Ohio App.3d 1, 519 N.E.2d 397. Evid.R. 613(B) requires that a witness be afforded an opportunity to explain or deny a prior inconsistent statement before extrinsic evidence of that statement is admissible. If a witness denies making the statement, a proper foundation has been laid, and the evidence does not relate to a collateral matter, extrinsic evidence is admissible. Evid.R. 613(B). See Byomin v.Alvis (1959), 169 Ohio St. 395, 159 N.E.2d 897.
 {¶ 63} In the instant case, the trial court spent a great deal of time, mostly out of the presence of the jury, regarding the two witnesses, whose prior trial testimony was read into the record. The maternal relatives of the child victim, Stephanie Jackson and S.J., were called as State's witnesses, but consistently thwarted attempts at examination and insisted they did not remember the child victim being injured at all. The trial court allowed the reading of their prior testimony after each witness had been subjected to extensive voir dire by the court as well as direct and cross-examination by the parties. Only after each witness repeatedly denied making the prior statements under oath and claimed to have no memory of the events in question was the testimony allowed to be read into the record. Therefore, we find that the witnesses' prior trial testimony was not hearsay and was properly admitted pursuant to Evid.R. 801(D)(1)(a) and 613(B).
 {¶ 64} Once we find that the statements in question are admissible, we move on to the appellant's allegations that the trial judge made prejudicial comments regarding the statements. Under Evid.R. 611(A), the trial court must "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment. However, a trial judge must remain impartial and avoid making comments that might influence the jury. State v. Boyd (1989), 63 Ohio App.3d 790,580 N.E.2d 443. A defendant who alleges that the trial court made improper statements must demonstrate that the statements somehow prejudiced the defendant. Id. (Emphasis added.)
 {¶ 65} In State v. Kay (1967), 12 Ohio App.2d 38, 49,230 N.E.2d 652, this court stated: "Statements made by a trial judge during the progress of a trial and within hearing of the jury are of the same effect as though embodied in the charge to the jury, and, where such remarks or questioning may lend themselves to being interpreted as an opinion on the part of the judge as to the credibility of witnesses or of a defendant or an opinion on his part as to the facts of the case, prejudicial error results. * * *." See, also, State v. Martin (April 22, 1999), Cuyahoga App. No. 73842. The test for the propriety of the trial judge's participation in the trial is whether the interruptions, comments, or questions by the judge interfered with the defendant's constitutional right to a fair trial. State v.Thomas (1973), 36 Ohio St.2d 68, 71, 303 N.E.2d 882; State v.Lawrence (1954), 162 Ohio St. 412, 123 N.E.2d 271.
 {¶ 66} The Ohio Supreme Court set forth five factors for reviewing courts to consider in determining whether a trial judge's actions and remarks were prejudicial: "1) the burden of proof is placed upon the defendant to demonstrate prejudice; 2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for; 3) the remarks are to be considered in light of the circumstances under which they are made; 4) consideration is to be given to their possible effect upon the jury; and 5) to their possible impairment of the effectiveness of counsel."State v. Wade (1978), 53 Ohio St.2d 182, 188, 373 N.E.2d 1244.
 {¶ 67} In the instant case, the objectionable comments alleged by the appellant were made during the testimony of Stephanie Jackson, sister to the appellant. Ms. Jackson attempted to testify on an earlier day during the trial, but was unable to continue at that time because she appeared lethargic and drowsy on the stand and "she seemed to be under the influence of some sort of alcohol or drugs." (Tr. 316.) After it became apparent that she was physically unable to continue, the trial court dismissed the jury and inquired of counsel, as well as of the detective who procured Ms. Jackson's appearance pursuant to her subpoena, as to whether Ms. Jackson was "putting an act on or if she [was] really going to sleep here on us or what she's doing, if she's really medicated or intoxicated, but she's clearly in no position to testify, if that's true." (Tr. 315.) These proceedings were held outside the presence of the jury; it was then determined that Ms. Jackson would be allowed to return on the next court day to continue her testimony. When the jury returned, the trial judge gave the following explanation: "Ladies and gentlemen, just for your explanation, the last witness appeared to be sleepy or going to sleep or something and we asked her to come back able to testify Monday morning if she can." (Tr. at 322.) Nothing in this statement indicated a predisposition for or against the witness or the appellant, and we find nothing in this exchange which would prejudice the appellant.
 {¶ 68} When Ms. Jackson returned to the stand the following court day, she appeared to be more coherent. She was recalled as a State's witness; the trial court inquired as to her mental status, referring only to whether she was "alert," and making no comments or judgments as to whether she had been under the influence of any drugs. (Tr. at 381.) Ms. Jackson then testified that she did not remember her niece's injury nor did she have any recollection of her previous trial testimony to the contrary. Thereafter, trial court made the following statement to the witness, after holding an off-the-record sidebar with counsel:
 {¶ 69} "All right. Now, ma'am, you testified in here in November, and there's a transcript of your testimony given under oath. You sat on that chair, under oath, and you testified that you didn't see what happened to [the child victim's] eye, you were at the store, but when you came back you saw her eye and that it was — you told the jury that it was bloody. And some other testimony. It goes on. Do you remember that, ma'am?" (Tr. 390-1.)
 {¶ 70} The trial court then read some of the prior testimony to the witness and asked if she remembered testifying to those statements. When she insisted that she did not remember testifying, the court made the following statements:
 {¶ 71} "Ma'am, here's what I'm going to give you the opportunity to do. I'm going to give you the opportunity to testify here now as to what you saw or I'm going to have your testimony read into the record as if it was given today. So if you want to give your testimony now is the time to do it, because one way or the other, it's going to come in. So if this is sometype of misguided effort to help someone, it will not help,because your testimony is going to come in from November." (Tr. at 392-3; emphasis added.)
 {¶ 72} At no time during the trial did the trial judge accuse the witness of lying, either during the instant proceeding or in the prior one, nor did his statements interfere with counsel's ability to present a defense. The trial judge did not make any evaluation as to the credibility of any testimony offered by this witness in the presence of the jury. Defense counsel had ample opportunity to cross-examine the witness in both trial proceedings.
 {¶ 73} When the trial judge's comments and instructions to the jury are reviewed in their totality, appellant's contention that the single comment regarding the "misguided effort to help someone" prejudiced her defense cannot be sustained. Further, once the witness' prior testimony was read into the record, the trial judge cautioned the jury to "judge it for what it's worth" (Tr. 414), as well as issuing an instruction regarding impeachment of witnesses and prior inconsistent statements when the jury was charged at the conclusion of the trial. (Tr. 504.) Finally, the trial judge issued a curative instruction at the close of the trial: "If, during the course of the trial, this Court said or did anything that you consider an indication of my view on the case, you are instructed to disregard it during your deliberations." (Tr. 509.)
 {¶ 74} Therefore, we find that the trial judge's statements to Ms. Jackson in the presence of the jury did not prejudice the appellant, nor did it impair her ability to obtain a fair trial.
 {¶ 75} Finally, appellant alleges that the trial court erred in allowing State's witness Detective Butler to testify regarding S.J.'s and Stephanie Jackson's prior statements to police (which were consistent with their original trial testimony). Where the court erroneously admits evidence, but there is remaining overwhelming evidence of the defendant's guilt, the error is considered harmless. State v. Bidinost, 71 Ohio St.3d 449, 464,1994-Ohio-465, 644 N.E.2d 318. When there is no reasonable possibility that the jury would have acquitted the defendant had the evidence not been admitted, any error in admitting said evidence may be considered harmless. See State v. Brown (1992),65 Ohio St.3d 483, 605 N.E.2d 46; State v. Heyward (Sept. 14, 2000), Cuyahoga App. No. 76838. Therefore, even if the trial court erred in allowing the police detective to testify as to the statements made to him by Stephanie Jackson and S.J. during his investigation, the error was harmless in light of the other evidence presented by the prosecution. Appellant's seventh and eighth assignments of error lack merit and are hereby overruled.
 {¶ 76} The judgment is affirmed.
Judgment affirmed.
 Kilbane, P.J., and McMonagle, J., concur.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] From our review of the record, there seems to be some discrepancy as to exactly when the injury to the child occurred. Neither the child victim nor the other children who testified could remember the exact date, the appellant did not testify, and the only other adult involved on the day in question, Stephanie Jackson, refused to cooperate when questioned. Regardless, the injury seems to have taken place at least four days prior to the child's presentation at the hospital on July 17, 2002.
[2] The name of the minor relative is being withheld to protect her identity.