JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Robert Plaza, appeals his conviction and sentence for rape after a jury found him guilty of this offense. For the reasons that follow, we affirm appellant's conviction, but vacate his sentence and remand for resentencing.
 {¶ 2} The record reveals that appellant was employed as a field representative for Sun Newspapers from April 2002 until July 2002. As a field representative, he was responsible for recruiting carriers for the newspaper, either adults or adolescent children, who would deliver the paper to various customers within appellant's district of Parma and Brooklyn. According to appellant's testimony, the newspaper instructed him to travel on foot in the district area and look for homes with items that would indicate that children lived there, such as a basketball hoop, a bicycle or some other evidence of adolescent presence.
 {¶ 3} While canvassing the area in this manner, appellant met and recruited the 12-year old victim in this case. Sometime in May 2002, appellant observed the victim and his 14-year old cousin riding bicycles in a neighborhood within his district. He approached the boys and inquired whether they would be interested in delivering the Sun Newspaper. Appellant then accompanied them to the victim's house, whereupon the victim sought permission from his mother to become a carrier for the newspaper. Appellant assured the victim's mother that he would assist the victim with the route until the victim felt comfortable with the duties involved, which included delivering the paper once a week and collecting the subscription fees once a month. The victim's mother acquiesced and the victim began his paper route shortly thereafter. The 14-year old cousin, although desirous of becoming a carrier, did not live within appellant's district and thus was not recruited by him.
 {¶ 4} In the weeks that followed, appellant ingratiated himself with the victim and his family. He would take the victim to the movies or out to eat at fast food restaurants after assisting the victim with his route. He ate dinner with the victim's family, spent the night on one occasion and went to the beach with the victim and his family.
 {¶ 5} The victim testified that sometime in June 2002, a little more than one month after being recruited by appellant, appellant asked for his assistance in delivering a route for a carrier who recently quit. After gaining permission from his father, the victim accompanied appellant in his car and the two completed the route. According to the victim's testimony, appellant then informed the victim that they were going to meet his boss. The victim was unfamiliar with the neighborhood in which appellant was driving and thought they were on the east side of the city. He testified that he was unconcerned, however, because he trusted appellant.
 {¶ 6} As they were driving, however, appellant became "like * * * a totally different person," according to the victim. Appellant told the victim that he was "bi-curious" and that he was going to be bisexual when he grew up. According to the victim, appellant said "just let me suck you off," to which the victim repeatedly refused. Appellant thereafter demanded that "either you let me, or you walk." By this time, appellant had stopped his vehicle in a nearby driveway. The victim, being in an unfamiliar area, testified that he felt he had no choice. The appellant then unzipped the victim's pants, pulled his penis from his boxer shorts and began sucking his penis. While appellant was so engaged, the victim began to feel sick and told appellant so. Appellant apparently stopped and drove the victim home.
 {¶ 7} Appellant thereafter was indicted for rape and kidnapping, with the latter charge including a sexual motivation specification. At the trial that followed, appellant denied giving the victim oral sex or engaging in any conversation of a sexual nature. He further denied driving the victim to the east side and testified that his boss lived in Berea, a west side community. The jury ultimately found appellant guilty of rape, but not guilty of kidnapping.
 {¶ 8} At the sentencing hearing that followed, appellant was sentenced not only for the rape conviction in this case, but for an unrelated offense in a separate case not before this court, case number CR-427435. From what we can glean from the transcript, appellant apparently entered a guilty plea to aggravated assault, a fourth degree felony. The trial court sentenced appellant to one year in prison on this conviction, which was ordered to be served consecutive to the life sentence imposed for the rape conviction in the instant case.
 {¶ 9} Appellant is now before this court and assigns four errors for our review.
 Judicial Partiality {¶ 10} In his first assignment of error, appellant contends that he was denied a fair trial when the trial court judge failed to act in a neutral and impartial manner. In particular, appellant argues that the trial judge repeatedly admonished his trial counsel in the jury's presence.
 {¶ 11} Section 5, Article I of the Ohio Constitution guarantees the right to a trial by jury, and this right "carries with it by implication the right to trial by a jury composed of unbiased and unprejudiced jurors." State v. Hessler (2000),90 Ohio St.3d 108, 133, quoting Lingafelter v. Moore (1917),95 Ohio St. 384, paragraph one of the syllabus (Moyer, C.J., dissenting). "One touchstone of a fair trial is an impartial trier of fact — `a jury capable and willing to decide the case solely on the evidence before it.'" Apaydin v. Cleveland ClinicFound. (1995), 105 Ohio App.3d 149, 154, quoting McDonoughPower Equipment, Inc. v. Greenwood (1993), 464 U.S. 548, 554,104 S.Ct. 845, 78 L.Ed.2d 663.
 {¶ 12} This important right is upheld, in part, by a judiciary that is detached and neutral in any proceeding before it. State v. Bayer (1995), 102 Ohio App.3d 172, 174. Although a judge is not prohibited from making comments during trial and, indeed, must do so at times in order to control the proceedings, he or she must bear in mind that "`the influence of the trial judge on the jury is necessarily and properly of great weight * * *.'" State v. Thomas (1973), 36 Ohio St.2d 68, 71, quotingStarr v. United States (1894), 153 U.S. 614, 626, 14 S.Ct. 919,923, 38 L.Ed. 841, 846. Juries are highly sensitive to every remark made by the trial judge, who is the ultimate authority in the courtroom. See Bursten v. United States (1968),395 F.2d 976, 983.
 {¶ 13} Where a trial judge asks questions or makes statements in the course of a criminal trial within the hearing of the jury, the questions or comments may be construed as an expression of opinion on the part of the judge concerning the credibility of a defendant or a witness, or his or her opinion as to the facts of the case. Prejudicial error may result when the jury believes that the trial judge has an opinion in the case. State v. Kay
(1967), 12 Ohio App.2d 38, 49. Thus, in a jury trial, "the court's participation by questioning or comment must be scrupulously limited, lest the court consciously or unconsciously indicate to the jury its opinion on the evidence or on the credibility of a witness." State ex rel. Wise v. Chand (1970),21 Ohio St.2d 113, paragraph three of the syllabus.
 {¶ 14} The test for the propriety of the trial judge's participation in the trial is whether the interruptions, comments or questions by the judge interfered with the defendant's constitutional right to a fair trial. State v. Thomas,36 Ohio St.2d at 71; State v. Lawrence (1954), 162 Ohio St. 412. InState v. Wade (1978), 53 Ohio St.2d 182, 188, the Ohio Supreme Court set forth the following criteria in determining whether a trial judge's remarks were prejudicial:
 {¶ 15} "(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." Id. at 188; see, also, State v.Scott (1986), 26 Ohio St.3d 92, 96.
 {¶ 16} We find it unnecessary to employ this criteria, however, because we note from the record that the challenged comments were not made in the jury's presence but, rather, at sidebar. Consequently, appellant can demonstrate no prejudice and this assignment of error must be overruled.
 Consecutive Sentences {¶ 17} In his second assignment of error, appellant contends that the trial court erred in imposing consecutive sentences.
 {¶ 18} In general, a reviewing court will not reverse a sentence unless that court finds, by clear and convincing evidence, that the sentence is unsupported by the record or is contrary to law. See R.C. 2953.08(G). In this case, appellant was convicted of one count of rape, which is a first degree felony pursuant to R.C. 2907.02(B). A sentence of life in prison is statutorily mandated by this section when the victim is less than 13 years of age. In the unrelated case not before this court, case number CR-427435, appellant reportedly pleaded guilty to aggravated assault, which is a fourth degree felony pursuant to R.C. 2903.12(B). If prison is not inconsistent with the purposes and principles of R.C. Chapter 2929, a definite term of anywhere from six to eighteen months is required for a fourth degree felony under R.C. 2929.14(A)(4).
 {¶ 19} The overriding purpose of felony sentencing is to protect the public from future crime by the offender and others and to punish the offender. Toward that end, R.C. 2929.11(A) provides:
 {¶ 20} "To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both."
 {¶ 21} R.C. 2929.14 authorizes the imposition of consecutive sentences only when the trial court concludes that the sentence is (1) necessary to protect the public from future crime or to punish the offender; (2) not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) the court finds one of the following: (a) the crimes were committed while awaiting trial or sentencing, under sanction or under post-release control; (b) the harm caused by multiple offenses was so great or unusual that a single prison term would not adequately reflect the seriousness of the offense; or (c) the offender's criminal history demonstrates that consecutive sentences are necessary to protect the public from future crime. R.C. 2929.14(E)(4).
 {¶ 22} Imposing consecutive prison terms for multiple convictions, therefore, is appropriate upon making certain findings as enumerated in this statute. When the trial court does so, however, it must state these findings, and its reasons for those findings, on the record. See R.C. 2929.19(B)(2)(c); see, also, State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, at ¶20. "While consecutive sentences are permissible under the law, a trial court must clearly align each rationale with the specific finding to support its decision to impose consecutive sentences." Id. at ¶ 21. Failure of a trial court to do so, constitutes reversible error. Id. at ¶ 23.
 {¶ 23} At the sentencing hearing in this case, the trial court sentenced appellant to a term of life imprisonment, stating that such a sentence is statutorily mandated when the victim is under 13 years of age. The court thereafter classified appellant as a sexual predator and informed him of his reporting duties in the event of his release. The court then reviewed the circumstances giving rise to the conviction in the unrelated case, case number CR-427435, stating:
 {¶ 24} "On Wednesday, 7-24-02, the victim got in a physical altercation with two males over the loud blowing of the car horn that they were in. The victim demanded the male to stop laying on the horn. Words were exchanged and escalated into a physical altercation, in which * * * [appellant] got a knife out of the vehicle he was in and cut the victim repeatedly while the juvenile punched the victim repeatedly.
 {¶ 25} "I placed that upon the record because we had [appellant] * * * with another juvenile. Interesting, isn't it?
 {¶ 26} "Now, [appellant] pled — the offense to which [appellant] pled guilty is a felony of the fourth degree.
 {¶ 27} "Now accordingly, it is the sentence of this court that [appellant] be incarcerated in the Lorain Institution for a period of one year and pay court costs."
 {¶ 28} The trial judge thereafter advised appellant that he would be subject to post-release control and the requirements attendant to that aspect of his sentence.
 {¶ 29} Mimicking the language of the statute, the court continued, stating:
 {¶ 30} "Now, these are two separate offenses. This court believes that consecutive sentences are necessary to protect the public and punish the offender.
 {¶ 31} "This Court believes that these sentences are not disproportionate to sentences in similare (sic) cases, and that they are necessary to protect the public.
 {¶ 32} "This Court also notes that [appellant] had a juvenile record for both criminal damaging and domestic violence, and believes that consecutive sentences are necessary."
 {¶ 33} As can be surmised from the excerpt above, the trial court merely mimicked the statutory language contained in R.C.2929.14(E)(4) without elaborating as to its reasons for any one finding. See State v. Johnson, Cuyahoga App. Nos. 81040, 81041, 81042, 2003-Ohio-288, at ¶ 14; see, also, State v. Howard,
Cuyahoga App. No. 82995, 2004-Ohio-513, ¶ 17. The Ohio Supreme Court's recent decision in State v. Comer, 2003-Ohio-4165, mandates more than a perfunctory listing of a trial court's findings. Although the trial court stated that it found it "interesting" that a juvenile had accompanied appellant in the unrelated assault case, the court does not associate this reason with any particular finding. To be sure, the court does mention appellant's past criminal history, which arguably could support the need-to-protect-the-public finding. Yet, nowhere in the court's analysis is there any discussion of whether consecutive sentences were proportionate to the seriousness of appellant's conduct. A sentencing court is directed to "clearly align each rationale with the specific finding" sufficient to support the imposition of consecutive sentences. Id. at ¶ 23. This the trial court did not do.
 {¶ 34} We, therefore, vacate appellant's sentence and remand for resentencing. Because of the frequency with which we are seeing consecutive sentences imposed between unrelated cases, we take this opportunity to note that our review is severely hampered when the unrelated case does not accompany the case under review. We have nothing but the trial court's rendition of the facts that comprise the unrelated case and must take at face value the offense for which the offender was convicted. The better practice in such a case would be to insure that the unrelated case accompany the case under appeal, especially if consecutive sentences are imposed and we must determine if sentencing was done so in compliance with the statute.
 Manifest Weight/Sufficiency of the Evidence {¶ 35} In his third assignment of error, appellant argues that his conviction is both against the manifest weight of the evidence and not sustained by sufficient evidence. Although appellant's argument vacillates between sufficiency and manifest weight, we find that his conviction is neither against the manifest weight of the evidence nor supported by insufficient evidence.
 {¶ 36} The Ohio Supreme Court in State v. Thompkins (1997),78 Ohio St.3d 380, explicitly stated that the "legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Id., paragraph two of the syllabus.
 {¶ 37} "With respect to sufficiency of the evidence, `"sufficiency"' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' * * * In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. * * * In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. * * *
 {¶ 38} "Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. * * * Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' * * *
 {¶ 39} "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. * * *" (Citations omitted.) Id. at 386-387.
 {¶ 40} With these differing standards of review in mind, it appears that appellant argues that the state did not prove beyond a reasonable doubt that he was "the perpetrator of the offense" and, therefore, his conviction for rape is not supported by sufficient evidence. Although appellant's argument in this regard is limited to this one sentence, we do not find his argument to be supported by the record.
 {¶ 41} An appellate court's function in reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial and determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. A verdict will not be disturbed on appeal unless reasonable minds could not reach the conclusion reached by the trier of fact. State v.Jenks (1991), 61 Ohio St.3d 259, 273. Reiterating, sufficiency is a test of adequacy. State v. Thompkins,78 Ohio St.3d at 386-387.
 {¶ 42} R.C. 2907.02(A) governs the offense of rape and provides, in part, that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." The victim testified that appellant unzipped his pants and sucked his penis. This conduct is sexual and the victim identified appellant as the perpetrator. This evidence, if believed by the trier of fact, supports appellant's conviction for rape. It cannot be said, therefore, that there was insufficient evidence on this element of rape.
 {¶ 43} As pertains to his argument that his conviction is against the manifest weight of the evidence, appellant argues that the victim's testimony lacked credibility and, as such, his conviction is against the weight of the evidence. It is true that there were some inconsistencies between the victim's testimony and that of his mother. These inconsistencies included differences in the number of times the victim's mother helped him with the paper route and what the victim did when he returned home after the offense took place. We do not find these inconsistencies to detract from the victim's credibility, however. The victim repeatedly and consistently testified that appellant unzipped his pants and sucked his penis. That he and his mother remember different aspects of the victim's behavior before or after the offense took place does not diminish the victim's credibility as to what took place in appellant's car.
 {¶ 44} Appellant also takes issue with the victim's testimony as it relates to traveling to the east side and the surroundings in which the offense took place, finding both to be incredible beyond belief. It must be remembered, however, that the victim was 12 years old at the time of the offense. His knowledge of directions or familiarity with road signs would not necessarily be as sophisticated as one who is older and drives an automobile. Coupled with the fear attendant such an attack, the trier of fact could resolve these conflicts in testimony without diminishing the victim's overall credibility as to the conduct that encompasses the offense of rape.
 {¶ 45} Because we neither find that appellant's conviction is unsupported by sufficient evidence nor against the manifest weight of the evidence, appellant's third assignment of error is not well taken and is overruled.
 Maximum Sentences {¶ 46} In his fourth assignment of error, appellant contends that the trial court erred in imposing the maximum sentence when he was a first offender.
 {¶ 47} We note, however, that the life sentence imposed is statutorily mandated by R.C. 2907.02(B) and the one-year term for aggravated assault in case number CR-427435 is not the maximum sentence for that offense according to R.C. 2929.14(A)(4). Consequently, appellant's fourth assignment of error is not well taken and is overruled.
 Conclusion {¶ 48} We affirm appellant's conviction for rape and note, parenthetically, that a sentence of life imprisonment is statutorily mandated by R.C. 2907.02(B). However, the trial court's decision to run the one-year aggravated assault sentence consecutive to appellant's sentence for rape does not comply with R.C. 2929.14(E)(4). We, therefore, vacate the sentence imposed and remand for resentencing according to R.C. 2953.08(G).
It is ordered that appellee and appellant equally share costs herein taxed.
The court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court, however, for resentencing.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Blackmon, P.J., and Dyke, J., Concur.