JOURNAL ENTRY and OPINION
{¶ 1} Plaintiff-appellant, J. Norman Stark ("Stark"), appeals the trial court's denial of his motion for a mistrial. He also challenges the jury verdict in favor of defendants-appellees, Scott and Susan Santora (the "Santoras"), on the basis that the trial court abused its discretion by excluding witnesses at trial. Finding merit to this appeal, we reverse and remand for a new trial.
 {¶ 2} In June 2000, Stark filed a collection action, pro se, against the Santoras for outstanding legal fees involving their case against Pulte Homes Construction Company ("the Pulte case"). The Santoras counterclaimed for legal malpractice, alleging that Stark failed to obtain the necessary expert to prevail on their claims and that, even after having notice of this fatal defect prior to trial, he failed to voluntarily dismiss their case without prejudice.[1] The Santoras sought to recover the costs they incurred, including the fees paid for unnecessary experts, legal fees associated with the Pulte case, the cost of their appeal, and the amount of damages resulting from Pulte's defective construction of their home.
 {¶ 3} On June 11, 2002, the instant case was assigned to a visiting judge for a jury trial. The following facts giving rise to the instant case are undisputed.
 {¶ 4} In 1993, the Santoras contracted with Pulte and paid $203,770 for a newly constructed single-family home in Strongsville. After moving into the home, they discovered numerous defects and attempted to remedy the problems with Pulte. In 1995, the Santoras hired Eric Engelke to inspect their home and provide an estimate of the cost of repairs. Engelke issued a general report and estimated the cost to repair to be between "$20,000 and $120,000."
 {¶ 5} After Pulte failed to adequately repair the defects, the Santoras retained Stark in June 1998 to represent them in the action against Pulte. At that time, Stark explained his fee arrangement and the anticipated costs of litigation, and the Santoras executed a five-page agreement, which detailed Stark's hourly rate and fees.
 {¶ 6} In October 1998, Stark filed a complaint for the Santoras against Pulte, alleging eight separate claims for breach of contract, fraudulent inducement, common law fraud, negligence, express warranty, gross negligence, unjust enrichment, and violations of the Consumer Sales Practices Act ("CSPA"). The trial court ultimately found the negligence claims barred by the statute of limitations. At the final pretrial, the trial judge indicated to Stark that the Santoras' proposed expert failed to opine on the proper measure of damages. Stark was granted leave to supplement the expert report and submitted a more detailed report from Eric Engelke on the cost of repairs. However, the court granted Pulte's motion to exclude Engelke's testimony, finding that his opinion did not supplement his earlier general report but, rather, constituted a new opinion which was not timely disclosed.
 {¶ 7} At the final pretrial, Pulte offered to pay the Santoras $255,000 to buy back the home and, at trial, increased its offer to $270,000. The Santoras declined the offers against Stark's recommendation.
 {¶ 8} When the Pulte case proceeded to trial, the Santoras pursued only those claims for common law fraud, express warranty, and those claims available under the CSPA. The court granted a directed verdict in favor of Pulte because the Santoras failed to present any relevant evidence as to damages. The contract between Pulte and the Santoras allowed for "cost to repair" damages only. Although the Santoras had retained an architect and appraiser for purposes of proving damages, the expert reports addressed only the issue of diminution of market value and not the cost to repair.
 {¶ 9} Stark's basic theory on his claim for legal fees in the instant case was that the Santoras failed to pay any of the fees stemming from the Pulte case, despite their contractual obligation to do so. John Gill, a practicing attorney for 40 years, testified as an expert on Stark's behalf on the issue of legal fees. He opined that the Pulte case involved complex issues and that Stark's billing was fair and appropriate. Although Gill was prepared to testify regarding the adequacy of Stark's representation, the trial court excluded such testimony because Stark failed to include such an opinion in Gill's expert report.
 {¶ 10} Stark defended himself on the counterclaim, contending that the Santoras were uncooperative and failed to heed his advice. He testified that he urged the Santoras to accept the settlement offers because of the cost of a trial and the unfavorable odds of prevailing on their claims at trial. He further claimed that he wanted to pursue the "cost to repair" theory of damages, but the Santoras refused and insisted on the diminution of value theory.
 {¶ 11} Similarly, the Santoras rejected Stark's recommendation to voluntarily dismiss the case without prejudice. In Stark's opinion, the Santoras' case was severely prejudiced by their own misrepresentation of the value of their house on a loan application during the pendency of the Pulte case and by Scott Santora's failure to properly answer questions concerning the cost to repair.
 {¶ 12} In contrast, the Santoras argued that Stark was dishonest and fraudulent in his representation. They claimed that they had already paid Stark more than $21,000 for his incompetent representation. They presented the expert testimony of attorney Patrick Holland, who testified that Stark breached the standard of care for an attorney, and that Stark's failure to obtain the appropriate expert, combined with his failure to voluntarily dismiss the Pulte case without prejudice, amounted to negligence. Holland also testified as to the range of damages that the Santoras could have recovered in the Pulte case if Stark had properly prepared the case. Relying on Eric Engelke's supplemental report and testimony, Holland stated that the cost to repair was approximately $115,055. Holland further stated that the Santoras were entitled to recover the cost of Stark's negligent representation ($58,121), the cost of a useless expert report ($450), the cost of an appeal ($3,000), and court costs ($1,374). Additionally, Holland stated that the Santoras had the potential to recover additional damages under the CSPA, and even punitive damages for fraud, but acknowledged that these damages were speculative.
 {¶ 13} On cross-examination, Holland admitted that he had previously represented the Santoras for approximately six months in their action against Stark for legal malpractice.
 {¶ 14} Contrary to Stark's statements, Scott Santora testified that he and his wife relied on Stark and followed his advice with regard to pursuing the diminution in value theory of recovery. He further testified that Stark never advised either of them to dismiss the case without prejudice.
 {¶ 15} Ultimately, the jury found in favor of the Santoras on both claims and awarded them $185,979 on their counterclaim for legal malpractice.
 {¶ 16} Stark appeals, raising three assignments of error.
 Judicial Impartiality {¶ 17} In his first assignment of error, Stark argues that the trial court abused its discretion by failing to grant a mistrial after its outburst during trial. Stark contends that the trial court's statements in the presence of the jury as to Stark's credibility and character denied him a fair trial. In response, the Santoras counter that Stark has failed to demonstrate how he was prejudiced by the trial court's remarks and, even if inappropriate, the remarks constituted harmless error.
 {¶ 18} In the context of civil cases, we review a trial court's denial of a motion for a mistrial the same as that for the denial of a new trial under Civ.R. 59. Hampton v. St.Michael Hosp., Cuyahoga App. No. 81009, 2003-Ohio-1828, quotingSettles v. Overpeck Trucking Co. (Aug. 26, 1991), Butler App. No. CA09-05-094; and citing Wills v. Boyd (Nov. 20, 1980), Montgomery App. No. 6755; see, also Civ.R. 59(A)(1) (irregularity in the proceedings is sufficient grounds for a new trial when it prevents a fair trial). Accordingly, the decision to grant or deny a new trial rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion.
 {¶ 19} It is well-settled that a trial judge is not precluded from making comments during trial and, in fact, must do so at times to control the proceedings. State v. Plaza, Cuyahoga App. No. 83074, 2004-Ohio-3117; State v. Jackson, Cuyahoga App. No. 82724, 2004-Ohio-2332.[2] See, also, Evid.R. 611(A). However, a trial judge should be cognizant of the influence his or her statements have over the jury and, therefore, a trial judge must remain impartial and avoid making comments that might influence the jury. Jackson, supra, citing State v. Boyd
(1989), 63 Ohio App.3d 790. See, also, State v. Allen (1995),102 Ohio App.3d 696. When a judge's comments express his or her opinion of the case or of a witness's credibility, prejudicial error results. Plaza, supra, and Jackson, supra, citingState v. Kay (1967), 12 Ohio App.2d 38.
 {¶ 20} To this end, the Ohio Supreme Court has appropriately warned:
{¶ 21} "In a trial before a jury, the court's participation byquestioning or comment must be scrupulously limited, lest thecourt, consciously or unconsciously, indicate to the jury itsopinion on the evidence or on the credibility of a witness.
 {¶ 22} In a jury trial, where the intensity, tenor, range andpersistence of the court's interrogation of a witness canreasonably indicate to the jury the court's opinion as to thecredibility of the witness or the weight to be given to histestimony, the interrogation is prejudicially erroneous."
 {¶ 23} State ex rel. Wise v. Chand (1970),21 Ohio St.2d 113, paragraphs three and four of the syllabus.
 {¶ 24} In State v. Wade (1978), 53 Ohio St.2d 182, the Ohio Supreme Court set forth the following criteria in determining whether a trial judge's remarks were prejudicial:
{¶ 25} "(1) The burden of proof is placed upon the defendantto demonstrate prejudice, (2) it is presumed that the trial judgeis in the best position to decide when a breach is committed andwhat corrective measures are called for, (3) the remarks are tobe considered in light of the circumstances under which they aremade, (4) consideration is to be given to their possible effectupon the jury, and (5) to their possible impairment of theeffectiveness of counsel."
 {¶ 26} Id. at 188.
 {¶ 27} In the instant case, the objectionable comments were precipitated by Stark's attempt to mislead his former client, Scott Santora, on cross-examination. Specifically, Stark asked Santora a rhetorical question, indicating that a relevant loan application was signed under oath and implying that Santora violated the oath by misrepresenting the value of his home. The court intervened, indicating that there was no reference to the statements being made under oath.
 {¶ 28} Stark continued with his cross-examination and reemphasized that there was a certification of truthfulness section at the end of the application. At this point, the court interrupted and stated:
{¶ 29} "The Court: Are you continuing to carry this on?
 {¶ 30} "Mr. Stark: No, your Honor.
 {¶ 31} "The Court: Well, then stop it.
 {¶ 32} "Mr. Stark: Thank you, your honor.
 {¶ 33} "The Court: You are polite and decent and all that kindof stuff. You are also a damn liar and you are devious.And you can duplicate that in the record, and you can take therecord to the appellate court and tell them what I said aboutyou. You are a disgrace. There is no oath administered as itrelates to the signature on that application." (Emphasis added.)
 {¶ 34} Shortly thereafter, while Stark was addressing a new subject during his cross-examination of Scott Santora, the trial court interrupted and provided the following instruction:
{¶ 35} "The Court: Ladies and gentlemen, a judge isn'tsupposed to speak like I just spoke. I am becoming a littleirritated, impatient, frustrated, and I should shut up.
 {¶ 36} I have been sitting here for 37 years. I know that. Iknow that. And I apologize particularly to the jury. Not forwhat I said. I believe what I said. But I am not permitted toinvade the province of the jury to determine the credibility ofthe witnesses.
 {¶ 37} Mr. Stark is a witness in this case. And to thatextent, by my hollering at him, I am invading your province todetermine his credibility. For that I apologize. And I apologizeto the Santoras, to counsel. Because my words very well couldcause a mistrial in this case. And maybe I should declare amistrial because of what I said. But I am not going to do that.
 {¶ 38} I am going to instruct you that you are to disregard mywords. I know that's hard to do. But I am going to instruct youto disregard anything and everything that I said back a fewminutes ago. And I am going ask you if you are able to do that.All I want is an honest answer from you." (Emphasis added.)
 {¶ 39} The Santoras argue that these remarks constitute harmless error because there was no prejudice. They contend that Stark received a fair trial and that, regardless of the trial court's comments, the outcome of the trial would have been the same, especially since Stark failed to present any expert testimony on the issue of legal malpractice. Additionally, the Santoras claim that the judge's curative instruction properly remedied any harm.
 {¶ 40} Although we recognize that Stark's attempt to mislead a witness on the stand was reprehensible, we nonetheless find that the trial court's remarks exceeded any appropriate admonishment. Further, we find that there was no way the jury could have overcome the judge's remarks because Stark's credibility was the critical issue in both his action for legal fees and the Santoras' claim of legal malpractice. Moreover, the prejudicial effect of the judge's comments was further compounded by the judge's earlier acknowledgment that he personally knew Stark.
 {¶ 41} In State v. Thomas (1973), 36 Ohio St.2d 68, the Ohio Supreme court recognized that some comments are so prejudicial that no curative instruction will remedy the harm. The court noted:
{¶ 42} "`It is well known, as a matter of judicial notice,that juries are highly sensitive to every utterance by the trialjudge, the trial arbiter, and that some comments may be so highlyprejudicial that even a strong admonition by the judge to thejury, that they are not bound by the judge's views, will not curethe error.'"
 {¶ 43} Id. at 72, quoting Bursten v. United States (1968),395 F. 2d 976, 983.
 {¶ 44} In the instant case, where the judge called Stark a "liar" and a "disgrace," and Stark's integrity and work ethic were critical factors for the jury to consider in weighing the evidence, we find that no curative instruction could have remedied the highly prejudicial comments.
 {¶ 45} Furthermore, contrary to the Santoras' assertion, the jury was not prohibited from finding in favor of Stark on either claim. Here, the jury was free to reject the testimony of the Santoras' expert, Patrick Holland, as not credible, especially in light of Holland's previous representation of the Santoras. Likewise, Stark presented expert testimony as to the reasonableness of his fees, and he testified as to the adequacy of his representation. Admittedly, Stark's testimony was self-serving, but, nevertheless, we cannot confidently say that the trial court's comments had no impact on the jury's verdict.[3]
 {¶ 46} Thus, we are constrained to find that the trial court should have granted a mistrial because its comments precluded the jury from objectively weighing the evidence presented.
 {¶ 47} Accordingly, the first assignment of error is sustained. Having found that the trial court abused its discretion in denying Stark's motion for a mistrial, his second and third assignments of error, pertaining to the exclusion of witnesses, are moot.[4]
 {¶ 48} Judgment reversed and case remanded for a new trial.
 {¶ 49} This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.
It is, therefore, considered that said appellants recover of said appellees the costs herein.
It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J. and Sweeney, J. concur.
[1] Consequently, at the close of the Pulte case, the trial court granted a directed verdict in favor of Pulte, which was subsequently affirmed by this court in Santora v. Pulte HomesConst. Co. (July 26, 2001), Cuyahoga App. No. 77825.
[2] Although the majority of cases analyzing the effect of a judge's comments on a party's right to a fair trial deal with criminal cases, the same analysis applies in civil cases. SeeMetaullics Sys. Co. L.P. v. Molten Metal Equip. Innovations
(1996), 110 Ohio App.3d 367 (Porter, J., dissenting); Hazen v.Morrison Snodgrass Co. (1911), 14 O.C.C. (N.S.) 483.
[3] Notably, the jury's award exceeded the itemized damages presented by the Santoras (excluding the speculative damages as to violations of CSPA and fraud), and it also presumably included legal fees that the Santoras never paid.
[4] These arguments relate to the trial court's decision granting the Santoras' motions in limine as to the legal malpractice testimony of John Gill and the fact testimony of Stark's former associate, Christopher Winchell. Because we have ordered a new trial, these rulings are not controlling.