JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Stevo Djuric, appeals the finding of guilt and his sentence in the Cuyahoga County Court of Common Pleas. For the following reasons, we affirm the finding of guilt, but vacate his sentence and remand for resentencing.
 {¶ 2} On April 17, 2004, the victim and her sister were visiting with their father at his apartment in Lakewood. Djuric lived in the same apartment complex as the father. While the father was outside with his daughters, Djuric came outside and invited them up to share candy and cookies for his birthday. The father declined, but Djuric insisted.
 {¶ 3} They went to Djuric's apartment. Dolores Cosic, Djuric's roommate, came out of the bedroom and sat at the table. The girls were given pop and candy. The father had a beer, and Djuric was drinking alcohol.
 {¶ 4} Soon after entering the apartment, Djuric told the girls to come to the bedroom to help him find the cat. This happened at least two times. Both times when the girls were in the bedroom, Djuric touched the victim's breasts and digitally penetrated her. The victim was ten years old at the time.
 {¶ 5} When they left Djuric's apartment, the father took the girls to Burger King. On their way home, the victim told her father that Djuric had touched her. The father called the police.
 {¶ 6} Officer Robert Moher of the Lakewood Police Department was first to arrive, and observed that the victim was crying and visibly upset. She told Officer Moher that Djuric grabbed her "underneath" while in the bedroom. Officer Heather Herpka was called in to interview the victim. Meanwhile, Officer Moher went to Djuric's apartment to speak with him, but he was out.
 {¶ 7} Officer Herpka learned that Djuric had fondled the victim's breasts twice, touched her vaginal area twice, and digitally penetrated her twice. Officer Herpka went with the victim and her father to Lakewood Hospital where a rape kit was performed. Officer Herpka learned that the victim's vaginal area was red and irritated.
 {¶ 8} Nurse Lisa Grafton testified that the victim was visibly upset when she, the nurse, performed the initial exam. Nurse Grafton testified that she observed the redness and that, relying on her experience, it was likely caused by "something that doesn't belong there."
 {¶ 9} Dr. Thomas A. Waters testified that he treated the victim in the emergency room. He testified that the victim was visibly upset and withdrawn during the examination and administration of the rape kit. After the exam, he reported erythema (redness, irritation) on the outside genitalia and visible vaginal mucosa (the lining of the vagina was red) and the victim's hymen was not intact. Dr. Waters concluded with a reasonable degree of scientific certainty that the redness was caused by possible manipulation of the genitalia.
 {¶ 10} Detective Leslie Wilkins from the Lakewood Police Department testified about her investigation and interview with Djuric. Det. Wilkins interviewed Djuric after she read and explained to him hisMiranda rights and Djuric waived these rights. Det. Wilkins testified that Djuric spoke and understood English, and that during the interview, Djuric told the detective that he told the arresting officers that he could not understand English because he was upset about his arrest. Djuric admitted to inviting the father and his girls up because it was Djuric's 52nd birthday. He denied touching the victim except for her ankles when he pulled her out from under the bed. He claimed she became stuck under the bed while looking for the cat.
 {¶ 11} Cosic testified for the defense. She testified that she had full view of the bedroom from where she sat and that she did not see Djuric do anything to the victim. She testified that Djuric went into the bedroom for only a short time to retrieve her medications so the girls would not get into them.
 {¶ 12} Djuric was charged with two counts of rape, two counts of gross sexual imposition, and two counts of kidnapping. All six counts contained sexually violent predator specifications, which eventually were dismissed by the state. Djuric was found guilty of one count of gross sexual imposition and one count of kidnapping with a sexual motivation specification. He was sentenced to a total of four years in prison. Djuric appeals, advancing eleven assignments of error for our review.
 {¶ 13} "I. Defendant was denied a fair trial when the Court, through its conduct and questioning enhanced the credibility of a state's witness, [the victim]."
 {¶ 14} It is well-settled that a trial judge is not precluded from making comments during trial and, in fact, must do so at times to control the proceedings. J. Norman Stark Co., L.P.A. v. Santora, Cuyahoga App. No. 81543, 2004-Ohio-5960, citing State v. Plaza, Cuyahoga App. No. 83074, 2004-Ohio-3117; State v. Jackson, Cuyahoga App. No. 82724, 2004-Ohio-2332. See, also, Evid.R. 611(A). However, a trial judge should be cognizant of the influence his or her statements have over the jury and, therefore, a trial judge must remain impartial and avoid making comments that might influence the jury. Jackson, supra, citingState v. Boyd (1989), 63 Ohio App.3d 790. See, also, State v. Allen
(1995), 102 Ohio App.3d 696. When a judge's comments express his or her opinion of the case or of a witness's credibility, prejudicial error results. Plaza, supra, and Jackson, supra, citing State v. Kay (1967),12 Ohio App.2d 38.
 {¶ 15} In State ex rel. Wise v. Chand (1970), 21 Ohio St.2d 113, paragraphs three and four of the syllabus, the Ohio Supreme Court warned:
 "In a trial before a jury, the court's participation by questioning or comment must be scrupulously limited, lest the court, consciously or unconsciously, indicate to the jury its opinion on the evidence or on the credibility of a witness.
 "In a jury trial, where the intensity, tenor, range and persistence of the court's interrogation of a witness can reasonably indicate to the jury the court's opinion as to the credibility of the witness or the weight to be given to his testimony, the interrogation is prejudicially erroneous."
 {¶ 16} In State v. Wade (1978), 53 Ohio St.2d 182, the Ohio Supreme Court set forth the following criteria for determining whether a trial judge's remarks were prejudicial:
 "(1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel."Id. at 188.
 {¶ 17} At trial, the victim did not want to testify as to where Djuric had touched her. The trial court stepped in and attempted to persuade the victim to answer the state's questions. Djuric argues that the following comments by the trial court judge deprived him of a fair trial:
 "THE COURT: Let me talk to [the victim] for just a second, okay?
 "STATE: Okay, Your Honor, please. Thank you.
 "THE COURT: I've been doing this for a long time, like 15 years, and these are sort of tough cases at times, but I've heard it all, you know? And the jurors understand what's going on here. They've heard it all, too. They don't think that you're a bad girl or anything like that if you say things that are private. We're here for justice. Have you learned about justice in your school?
 "THE WITNESS: Yeah.
 "THE COURT: And this is a real — it's important stuff on the road to justice. We got to do this here today.
 "We need some Kleenex. We'll take a break here. Do you need a glass of water? I think I do. I'm going to take a drink here.
 "We got to do this. This is what we do here. It's a very important step along the road to justice, and as difficult as this story is, you got to tell it once to these 14 people — 13. And if necessary, what we can do is we can talk about `my private part down there.' You can stand up and show us, you can draw a picture, but ultimately we're going to have to ask you to be brave and testify, okay?"
 When the victim completed her testimony, the trial court stated:
 "THE COURT: All right, [victim]. Thanks very much for your testimony. We certainly appreciate it * * * Well, enjoy the rest of your week. It was nice to meet you * * * ."
 {¶ 18} In addition, Djuric alleges that the judge shook hands with the victim before she testified. Djuric argues that the judge's comments and actions expressed an opinion as to the victim's credibility and deprived him of a fair trial. The state argues that Djuric failed to object to the judge's colloquy with the victim, and furthermore, the state contends that Djuric did not show prejudice. The state also asserts that there is no evidence in the record that the trial court shook hands with the victim. Alternatively, the state argues that any error in the trial court's comments was cured by the court's final jury instruction, in which the court stated:
 "If I have said or done anything during the course of this trial that you consider to be any indication whatsoever of my view on this case, I can assure that you are wrong. I do not have an opinion because the decision is yours and it is not appropriate for me to give any indication, and frankly, you have been listening to the evidence; you will make the determination. Disregard anything you may think I have said or done that would give you any indication whatsoever as to the ultimate issue of the outcome of this lawsuit."
 {¶ 19} Although Djuric did not object at the time of the judge's comments, he did move for a mistrial at the end of the state's case based on the judge's comments and actions. Evid.R. 614(C) states the following: "Objections to the calling of witnesses by the court or through the interrogation by it may be made at the time or at the next available opportunity when the jury is not present." We agree with Djuric that this was sufficient to preserve the issue for appeal.
 {¶ 20} The granting of a mistrial is necessary only when a fair trial is no longer possible. State v. Chambers, Cuyahoga App. No. 87323,2006-Ohio-5326, citing State v. Franklin (1991), 62 Ohio St.3d 118, 127. A trial court's grant or denial of a motion for mistrial is reviewed under the abuse of discretion standard. State v. Conway,108 Ohio St.3d 214, 244, 2006-Ohio-791.
 {¶ 21} We agree that the trial court's comments and actions, if believed, were borderline and implied that the victim was telling the truth and that the only way justice could be done in this case was for the victim to testify. However, the trial court's jury instructions included an order not to consider anything the trial court may have done or said that could be perceived as its opinion on the case. Under the circumstances, we find that the trial court's comments constituted harmless error. Crim.R. 52(A) defines harmless error as: "any error, defect, irregularity, or variance which does not affect substantial rights * * *." In light of all the evidence put forth corroborating the victim's testimony, we cannot say that the outcome of the trial would likely have been different had the trial court not made the improper comments. See State v. Allen (1995), 102 Ohio App.3d 696, 700-701.
 {¶ 22} Accordingly, Djuric's first assignment of error is overruled.
 {¶ 23} "II. Defendant was denied his constitutional right to a public trial when the Court sealed the courtroom during the testimony of [the victim]."
 {¶ 24} Djuric claims he was denied his right to a public trial when the trial court sealed the courtroom while the victim was testifying.
 {¶ 25} The right to a public trial is set forth in the Sixth Amendment of the Constitution of the United States and applies to the states through the Fourteenth Amendment. In re Oliver (1984), 333 U.S. 257,273. Likewise, Section 10, Article I of the Ohio Constitution guarantees an accused a public trial. State v. Whitaker, Cuyahoga App. No. 83824,2004-Ohio-5016. Nonetheless, the right to a public trial is not absolute, and an order barring spectators from observing a portion of an otherwise public trial does not necessarily introduce error of constitutional dimension. Id.
 {¶ 26} "A trial court can determine on a case-by-case basis whether closure is necessary to protect the welfare of a minor victim. Among the factors to be weighed are the minor victim's age, psychological maturity, and understanding, the nature of the crime, the desires of the victim, and the interests of parents and relatives." Globe Newspaper Co.v. Superior Court for the Cty. of Norfolk (1982), 457 U.S. 596, 608.
 {¶ 27} As a general rule, criminal trials must be open to the public and the press. Richmond Newspapers, Inc. v. Virginia (1980),448 U.S. 555. However, Globe made clear that in certain situations, trial courts do have the discretion to close the courtroom to the press and public.
 {¶ 28} On appeal from such an order, the reviewing court is to determine whether the lower court abused its discretion. State v.Whitaker, Cuyahoga App. No. 83824, 2004-Ohio-5016. Nevertheless, failure to object to closing of the courtroom constitutes a waiver of the right to a public trial. Peretz v. United States (1991), 501 U.S. 923, citingLevine v. United States (1960), 362 U.S. 610, 619.
 {¶ 29} Assuming, for the sake of argument, that Djuric objected at side-bar to the court closing the courtroom, we find that the trial court did not abuse its discretion when it ordered "at this point we're going to seal the courtroom. In other words, we're not going to have people walking in and out." The court did not bar spectators; it required only that spectators not move in and out during the testimony. The court's order came after the victim was reluctant to answer the state's questions regarding where Djuric allegedly touched her. It was evident to the trial court that the victim was very nervous and embarrassed to talk about what happened. The purpose of closing the courtroom for the remaining portion of her testimony was to eliminate excess noise and to save the witness as much embarrassment as possible. The standards laid out in Globe were followed in this case. The trial court legitimately exercised its discretion barring movement in and out of the courtroom during the testimony of the victim. Further, Djuric suffered no prejudice when the trial court sealed the courtroom. Therefore, his second assignment of error is overruled.
 {¶ 30} "III. Defendant was denied due process of law when the Court failed to conduct a pretrial evidentiary hearing on Defendant's motion to suppress."
 {¶ 31} Djuric complains that the trial court erred when it failed to conduct a pretrial hearing on his motion to suppress. A review of the record reveals that Djuric's attorney mentioned his motion to suppress while arguing for an interpreter. During his argument he conceded that the jury should decide whether Djuric can understand English, which was one of the bases for his motion to suppress. In addition, Djuric did not object to the trial going forward without a hearing or a ruling on his motion to suppress.
 {¶ 32} Djuric should have raised an objection to the trial court's action prior to the commencement of trial, and failure to object waives any error. State v. Canady (Apr. 16, 1992), Cuyahoga App. No. 60355;State v. Weems (Mar. 18, 1982), Cuyahoga App. No. 43813. Notwithstanding, Crim.R. 12(E) does not mandate an evidentiary hearing on every motion to suppress. State v. Johnson (Apr. 2, 1992), Cuyahoga App. No. 60402, citing Solon v. Mallion (1983), 10 Ohio App.3d 130, 132. A trial court must conduct such a hearing only when the claims in the motion would justify relief and are supported by factual allegations. Id. See, also, State v. Hartley (1988), 51 Ohio App.3d 47.
 {¶ 33} Djuric's motion alleges that he was arrested at his home without a warrant and without probable cause, and that he did not knowingly, intelligently or voluntarily waive his Miranda warnings. Djuric alleges that he does not have a good command of the English language. Again, the record reflects that Djuric conceded that the jury should decide whether Djuric understands the English language. Furthermore, the testimony adduced at trial indicated that Djuric did understand and speak English and that he told the arresting officers he did not understand English only because he was mad about the arrest. Furthermore, Djuric's motion contains no factual allegations to support his contention that there was no probable cause to make a warrantless arrest. A motion to suppress may be overruled without a hearing when the motion consists of nothing but a boilerplate recitation of all the possible objections to the admission of evidence. State v. Clark (Feb. 1, 1996), Cuyahoga App. No. 67305, citing Bryan v. Fox (1991),76 Ohio App.3d 607. Thus, the court could have denied the motion without further hearing.
 {¶ 34} Djuric's third assignment of error is overruled.
 {¶ 35} "IV. Defendant was denied due process of law when the court overruled his motion to suppress."
 {¶ 36} At the close of the state's case, Djuric requested that the court revisit his motion to suppress, arguing that he was arrested at his home without a warrant and held for two days without being allowed a phone call. The state argued that there was probable cause to arrest Djuric without a warrant and that he could have been held for forty-eight hours prior to questioning. In addition, the state argued that Djuric never raised the "phone call issue" in his motion to suppress. As stated previously, a motion to suppress may be overruled without a hearing when the motion consists of nothing more than boilerplate language alleging constitutional violations and requesting the court to suppress certain evidence. Since Djuric's motion simply stated that he was wrongfully arrested without a warrant or probable cause, the court was within its discretion to deny Djuric's motion. Furthermore, a warrantless arrest is valid if the arresting officer possessed probable cause to believe that the suspect committed an offense. State v. Schlick (Dec. 7, 2000), Cuyahoga App. No. 77885, citing Beck v. Ohio (1964), 379 U.S. 89, 91. Probable cause to arrest exists if all the facts and circumstances within the officer's knowledge were sufficient to cause a prudent person to believe that the individual had committed or was committing an offense. Id.; State v. Otte (1996),74 Ohio St.3d 555, 559. In determining whether probable cause to arrest exists, a reviewing court should examine the "totality of the circumstances." Illinois v. Gates (1983), 462 U.S. 213, 230-31. In this case, there was probable cause to arrest Djuric for the rape of a child.
 {¶ 37} Finally, regarding Djuric's argument that his statutory right to a phone call was violated, the Ohio Supreme Court has held that the exclusionary rule is not applicable as a sanction for a violation of R.C. 2935.14 or 2935.20. See State v. Unger (1981), 67 St.2d 66, 70, andState v. Griffith (1996), 74 Ohio St.3d 554. Therefore, Djuric's argument is without merit.
 {¶ 38} Djuric's fourth assignment of error is overruled. "V. Defendant was denied due process of law when the Court allowed Detective Leslie D. Wilkins to testify as to the truth of the allegations made by [the victim]."
 {¶ 39} Under this assignment of error, Djuric argues that the testimony elicited by the state on direct examination of Detective Leslie Wilkins invaded the province of the jury and was plain error. Djuric complains about the following testimony:
 "A. Well, after Mr. Djuric, again, denied that any touching took place, I had asked him: Is there anything that could be misconstrued here? Is there anything that's, to clarify, maybe why an allegation such as this being made by a complete stranger, a 10-year-old girl?
 "Q. Let me stop you there, Detective Wilkins. Why did you feel it was necessary to again inquire and say, Well, maybe could something be misconstrued here? Why did you feel it was necessary to start that line of questioning?
 "MR. MANCINO: Objection.
 "COURT: Overruled.
 "Q. Please answer.
 "A. It's been my experience that with a victim of this age, usually-usually we sometimes see victims and there might be possibly a motive for an allegation. There might be some other underlying circumstances that, you know, had brought us to a police investigation with a 10-year-old, and after reading the reports, we had reason to believe that [the victim] was telling us the absolute truth about what happened to her.
 "MR. MANCINO: Objection.
 "COURT: Overruled."
 {¶ 40} At the time of this testimony, the detective was testifying about her interview with Djuric. She was explaining why she asked Djuric if any of his actions could be misconstrued.
 {¶ 41} In State v. Boston (1989), 46 Ohio St.3d 108, syllabus, the Supreme Court of Ohio held as follows: "An expert may not testify as to the expert's opinion of the veracity of the statements of a child declarant." Boston stands for the proposition that expert testimony cannot be used to show that a child is telling the truth or that the child accurately testified. This is because the trier of fact, and not the expert, has the burden of assessing the credibility and veracity of witnesses. Id. at 128-129.
 {¶ 42} The state argues that the detective's testimony did not violateBoston because she was not testifying as an expert in this case. As stated in State v. Miller (Jan. 26, 2001), Montgomery App. No. 18102, "This argument is not persuasive for two reasons. First, we believe that jurors are likely to perceive police officers as expert witnesses, especially when such officers are giving opinions about the present case based upon their previous experiences with other cases. Second, and more importantly, the language of Boston, supra, makes it clear that the holding of that case applies to lay persons as well as experts.Boston, 46 Ohio St.3d at 129 (quotation omitted). Thus, regardless of whether a police officer testifies as an expert or lay witness, his testimony cannot violate Boston.'"
 {¶ 43} In this case, the detective's testimony was in direct violation of Boston because she offered an opinion as to the truth of the victim's accusations. The admission of the detective's testimony was improper. Nevertheless, we must determine whether such error was harmless.
 {¶ 44} Pursuant to Crim.R. 52(A), "any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." In order to find an error harmless, a reviewing court must be able to declare a belief that the error was harmless beyond a reasonable doubt.State v. Lytle (1976), 48 Ohio St.2d 391, 403. A reviewing court may overlook an error where the admissible evidence comprises "overwhelming" proof of a defendant's guilt. State v. Williams (1983),6 Ohio St.3d 281, 290. "Where there is no reasonable possibility that unlawful testimony contributed to a conviction, the error is harmless and therefore will not be grounds for reversal." State v. Brown (1992),65 Ohio St.3d 483, 485, 1992-Ohio-61. In State v. Lewis (Aug. 14, 1991), Summit App. No. 14632, the Ninth Appellate District found an expert opinion on the veracity and credibility of a child victim was prohibited by Boston. However, the court concluded that admission of the expert opinion was harmless beyond a reasonable doubt. Several key elements factored into its finding of harmless error: (1) the victim testified and was subject to cross-examination; (2) the state introduced substantial medical evidence of sexual abuse; and (3) the expert's testimony was cumulative to other evidence. This court has recognized that recent case law states that "Boston does not apply when the child victim actually testifies and is subjected to cross-examination."State v. Benjamin, Cuyahoga App. No. 87364, 2006-Ohio-5330, quotingState v. Curren, Morrow App. No. 04 CA 8, 2005-Ohio-4315; State v.Fusion (Aug. 11, 1998), Knox App. No. 97 CA 000023. In this case, the victim testified and was subject to cross-examination. In addition, there was medical evidence of the assault. Finally, the detective's testimony was cumulative; therefore, we find that the error was harmless beyond a reasonable doubt. Accordingly, Djuric's fifth assignment of error is overruled.
 {¶ 45} "VI. Defendant was denied his right of confrontation and cross-examination when the Court admitted testimony of hearsay evidence."
 {¶ 46} Under this assignment of error, Djuric complains that the trial court allowed inadmissible hearsay in over his objection and in violation of his right to confrontation. Djuric points to the testimony of Det. Wilkins and Officer Herpka because they were permitted to testify as to what they "learned" during their police investigation.
 {¶ 47} First, the victim testified at trial and was subject to cross-examination; therefore, the Confrontation Clause was not implicated. Furthermore, in State v. Thomas (1980), 61 Ohio St.2d 223,232, the Ohio Supreme Court addressed this issue and held as follows:
 "The testimony at issue was offered to explain the subsequent investigative activities of the witnesses. It was not offered to prove the truth of the matter asserted. It is well established that extrajudicial statements made by an out-of-court declarant are properly admissible to explain the actions of a witness to whom the statement was directed. * * * The testimony was properly admitted for this purpose."
Thomas was reaffirmed in State v. Skatzes, 104 Ohio St.3d 195, 214,2004-Ohio-6391, which was decided December 8, 2004, nine months afterCrawford v. Washington (2004), 541 U.S. 36. Although Crawford applied Confrontation Clause analysis to testimonial out-of-court statements, the court made clear that the use of such statements may be exempt from Confrontation Clause analysis. State v. Scott, Franklin App. No. 05AP-1144, 2006-Ohio-4981. The court noted a distinction between testimonial evidence used to prove the matter asserted in the out-of-court statement and testimonial evidence that was not used to prove the truth of the statement. Id. In a footnote theCrawford court noted that "[t]he Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id. at 59, fn. 9, citing Tennessee v. Street
(1985), 471 U.S. 409, 414. Although the victim's statements in this case were testimonial, we find that the statements made by Det. Wilkins and Officer Herpka were admissible because they were not offered to prove the truth of the matter asserted. Both the detective and the officer explained the steps they took in investigating the victim's rape report.
 {¶ 48} Next, Djuric objects to the testimony given by Nurse Grafton when she stated that the victim told her she had been sexually assaulted. Here again, the victim testified at trial and was subject to cross-examination; therefore, the Confrontation Clause was not implicated. Furthermore, the Supreme Court of Ohio recently ruled, "Where the victim of a criminal offense makes a statement to a police officer identifying the accused, and subsequently presents herself for a medical examination for purposes of gathering evidence of the crime and repeats the identification, the latter statement is not made `under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial,' because the declarant had previously made the identifying statement to the police." State v. Stahl, 111 Ohio St.3d 186, 198, 2006-Ohio-5482, citing Crawford, 541 U.S. at 53. Therefore, the victim's statements to Nurse Grafton were admissible.
 {¶ 49} Djuric's sixth assignment of error is overruled.
 {¶ 50} "VII. Defendant was denied due process of law and a fair trial by reason of cumulative errors committed during the course of the trial."
 {¶ 51} Djuric alleges eleven errors committed at trial and claims that these cumulative errors denied him of a fair trial.
 {¶ 52} It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal, 87 Ohio St.3d 378, 397, 2000-Ohio-448. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. Id. at 398. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors.State v. Durant (2004), 159 Ohio App.3d 208, 219; see, also, State v.Thomas, Clark App. No. 2000-CA-43, 2001-Ohio-1354.
 {¶ 53} Djuric complains about numerous things but cites no case law in support of eight of the alleged errors. We find no merit to any of the complained errors and will not address each pursuant to App.R. 12(A)(2) and 16(A)(7).
 {¶ 54} Next, Djuric complains that it was improper for Det. Wilkins to testify that she thought the victim was telling the truth. As stated previously, we find this error to be harmless.
 {¶ 55} Djuric also complains that the state argued during closing statement that the victim was telling the truth. The Ohio Supreme Court in State v. Slagle (1992), 65 Ohio St.3d 597, 607, stated: "when we review a prosecutor's closing argument we ask two questions: `whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.' State v. Smith (1984),14 Ohio St.3d 13, 14, 14 Ohio B. 317, 470 N.E.2d 883 * * *. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz (1980), 63 Ohio St.2d 150, 157,407 N.E.2d 1268 * * *." (Parallel citations omitted.)
 {¶ 56} "Counsel is generally given latitude during closing arguments to state what the evidence has shown and what inferences can be made by the jury." State v. Hearns, 11th Dist. No. 2002-P-0050, 2004-Ohio-385, at ¶ 15, citing State v. Davis (1996), 76 Ohio St.3d 107, 117,1996-Ohio-414. In determining whether the prosecutor's statements affected a substantial right of the defendant, an appellate court should consider the following factors: "(1) the nature of the remarks; (2) whether an objection was made by defense counsel; (3) whether the court gave any corrective instructions; and (4) the strength of the evidence presented against the defendant." Hearns, 2004-Ohio-385, at ¶ 15, citingState v. Braxton (1995), 102 Ohio App.3d 28, 41.
 {¶ 57} Although the state's comment was arguably improper, we find, in light of the evidence produced at trial, it did not prejudicially affect Djuric.
 {¶ 58} Last, Djuric complains about the questions posed to Cosic with regard to what she told the detective. Evid.R. 616(C) allows a witness to be impeached using specific contradiction. The state was permitted to show that Cosic's testimony in court was different from what she told the detective; therefore, there was no error.
 {¶ 59} Although several errors were committed at trial, we do not find a reasonable probability that the outcome of the trial would have been different. Accordingly, Djuric's seventh assignment of error is overruled.
 {¶ 60} "VIII. Defendant was denied due process of law when the Court denied defendant's motion for judgment of acquittal as to the kidnapping count."
 {¶ 61} Crim.R. 29(A) permits a motion for acquittal if the evidence is insufficient to sustain a conviction for the offenses as charged in the indictment. A challenge to the sufficiency of the evidence attacks the adequacy of the evidence presented. Whether the evidence is legally sufficient to sustain a conviction is a question of law. See State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. The relevant inquiry in a claim of insufficiency is "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.'" State v. Leonard, 104 Ohio St.3d 54, 67,2004-Ohio-6235, quoting State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 62} Djuric complains that there was insufficient evidence to sustain a conviction for kidnapping in count two because there was no evidence to show that Djuric by any means removed the victim from where she was found or restrained her of her liberty.
 {¶ 63} The kidnapping statute reads as follows:
 "No person, by force, threat, or deception, or in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person * * * to facilitate the commission of any felony or flight thereafter [and] to engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will * * *." R.C. 2905.01(A)(4).
 {¶ 64} In this case, there was sufficient evidence to prove beyond a reasonable doubt that the victim was removed from the living room where her father was to the bedroom by Djuric's ploy to find his cat. Accordingly, Djuric's eighth assignment of error is overruled.
 {¶ 65} "IX. Defendant was denied due process of law when he was found not guilty and guilty of gross sexual imposition and kidnapping involving identical allegations."
 {¶ 66} Djuric argues that he cannot be found guilty of gross sexual imposition and kidnapping because he was found not guilty of another count of gross sexual imposition and kidnapping. Djuric argues that the indictment alleged the same conduct for all counts.
 {¶ 67} Under Crim.R. 8(A), two or more offenses may be charged together if the offenses "are of the same or similar character * * * or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." In fact, "the law favors joining multiple offenses in a single trial under Crim.R. 8(A) if the offenses charged `are of the same or similar character.'" State v. Hand, 107 Ohio St.3d 378, 401,2006-Ohio-18, quoting State v. Lott, 51 Ohio St.3d 160, 163. Djuric was charged with two separate counts of gross sexual imposition and kidnapping because the facts alleged by the victim detailed two separate but similar incidents that occurred during the two trips to the bedroom. Djuric's ninth assignment of error is without merit and thus overruled.
 {¶ 68} "X. Defendant was denied due process of law when he was sentenced to more than a minimum sentence."
 {¶ 69} The trial court imposed more than the minimum sentence pursuant to R.C. 2929.14(B) and 2929.19(B)(2), which the Supreme Court of Ohio has since declared unconstitutional and excised from the statutory scheme. State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, ?1-4, applyingUnited States v. Booker (2005), 543 U.S. 220; Blakely v. Washington
(2004), 542 U.S. 296; and Apprendi v. New Jersey (2000), 530 U.S. 466. As a result, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Foster, at paragraph 7 of the syllabus, and State v. Mathis, 109 Ohio St.3d 54, 2006-Ohio-855, paragraph 3 of the syllabus. Nevertheless, defendants who were sentenced under unconstitutional and now void statutory provisions must be resentenced. Foster, supra, ¶ 103-106. Consequently, we sustain Djuric's assignment of error, vacate his sentence, and remand this matter to the trial court for resentencing.
 {¶ 70} "XI. Defendant was denied due process of law when the Court in recording the verdict of the jury and sentencing stated defendant had been found guilty of gross sexual imposition with a sexually violent predator specification."
 {¶ 71} Djuric complains that the trial court erred because its journal entry reflects that he was found guilty of the sexually violent predator specification, when in fact he was not. We agree that the verdict and sentencing journal entry incorrectly state that Djuric was found guilty of the sexually violent predator specification.
 {¶ 72} As a result, Djuric's eleventh assignment of error is sustained. As stated in the previous assignment of error, Djuric's sentence is vacated and this case is remanded for resentencing. In addition, the trial court is ordered to correct the verdict and sentencing journal entry to accurately reflect Djuric's convictions.
Affirmed in part and vacated in part and remanded for resentencing.
It is ordered that appellant recover from appellee costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MICHAEL J. CORRIGAN, J.,* CONCURS; CHRISTINE T. M CM O NAGLE, J., CONCURS IN JUDGMENT ONLY REGARDING ASSIGNMENT OF ERROR 1 and CONCURS WITH MAJORITY ON THE REMAINING ASSIGNMENTS OF ERROR (See separate opinion.)
* Sitting by Assignment: Judge Michael J. Corrigan, Retired, of the Eighth District Court of Appeals.