[Cite as *State v. Kesting*, 2014-Ohio-3058.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                      :

    Plaintiff-Appellee                        :         C.A. CASE NO.    25789

v.                                                 :         T.C. NO.    13CR759

NATHANIEL J. KESTING                               :         (Criminal appeal from
                                                             Common Pleas Court)

    Defendant-Appellant                       :

                                                   :

        . . . . . . . . . .

**O P I N I O N**

Rendered on the     11th     day of     July    , 2014.

        . . . . . . . . . .

MATTHEW T. CRAWFORD, Atty. Reg. No. 0089205, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. No. 0072135, 424 Patterson Rd., Dayton, Ohio 45419
      Attorney for Defendant-Appellant

        . . . . . . . . . .

FROELICH, P.J.

    **{¶ 1}** Nathaniel J. Kesting was convicted after a jury trial in the

Montgomery County Court of Common Pleas of domestic violence, a third-degree felony,

along with a specification that he caused or threatened to cause physical harm in the commission of the offense. The trial court sentenced him to 36 months in prison and ordered him to pay restitution to the complainant and a $10,000 fine.

{¶ 2} Kesting appeals from his convictions, raising four assignments of error. We will address them in an order that facilitates our analysis. For the following reasons, the trial court's judgment will be affirmed.

## I. Manifest Weight of the Evidence

{¶ 3} Kesting's fourth assignment of error states: "The verdict of the jury was against the manifest weight of the evidence."

{¶ 4} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12; *see Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19 ("'manifest weight of the evidence' refers to a greater amount of credible evidence and relates to persuasion"). When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 5} Because the trier of fact sees and hears the witnesses at trial, we must defer

to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684 (Aug. 22, 1997). However, we may determine which of several competing inferences suggested by the evidence should be preferred. *Id.* The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin*, 20 Ohio App.3d at 175.

{¶ 6} According to the State's evidence at trial, on March 6, 2013, Kesting shared an apartment with his girlfriend, Jessica. They had lived together in that apartment for approximately two weeks, along with their two-year-old daughter. Kesting stipulated that he had two prior domestic violence convictions; the complainant for those offenses was a prior girlfriend. (The existence of two prior convictions was an element of the offense.)

{¶ 7} Jessica spent the afternoon of March 6, 2013 shopping with Kesting's mother, Rebecca Kesting. Later that evening, while Jessica and Kesting were home together, the couple began arguing over Kesting's alleged lack of participation in their daughter's case plan with Children Services and Kesting's marijuana use in the apartment. The argument became physical. Jessica testified that Kesting took their daughter from her arms, grabbed her (Jessica) by the upper arms and slammed her against the wall. Kesting then called his mother and asked her to come to the apartment.

{¶ 8} After Rebecca Kesting arrived, Rebecca and Jessica began to argue. Jessica testified that Rebecca lunged at her "looking as if she was going to choke me." Jessica "dodged away," but Rebecca grabbed her by the hair. When Jessica pushed Rebecca away,

Kesting told Jessica, "Don't touch my mother." Kesting then shoved Jessica to the floor, kicked her side, and "stomped" on her right buttocks three times. Jessica testified that Kesting struck her in the face with his fist once and punched her upper back more than once. Kesting also held Jessica by the neck and slammed her head against the wall across from their kitchen bar area on numerous occasions. While Kesting was attacking Jessica, Rebecca kept lunging at her. Rebecca punched Jessica in the nose "so severe I thought it was broken." Jessica acknowledged biting Rebecca "so she would get off of me."

{¶ 9} Eventually, Jessica took her daughter, went into the bedroom, and barricaded the door with a dresser. Jessica had tried to leave several times, but Kesting and his mother "weren't going to let me take [my daughter] with me." Jessica did not contact the police immediately, because there was no telephone in the bedroom. Jessica heard Kesting and his mother talking in the apartment; Kesting stated that he should not call the police because he had a warrant and because of the way Jessica and Rebecca both looked.

{¶ 10} Rebecca Kesting was gone when Jessica left the bedroom the following morning; Kesting was on the couch. Kesting asked Jessica if she were going to press charges. Kesting told Jessica, "If you do press charges and I go to jail, I'll put you in the ground when I get out," and he choked her. At approximately 11:30 a.m., Rebecca drove to the apartment's parking lot, and Kesting went out and left with her.

{¶ 11} Jessica later left the apartment, dropped off her daughter at daycare, and went to Grandview Hospital. An emergency room nurse first observed multiple scratches and bruises to Jessica's face, arms and feet, blood on Jessica's jeans, and matted blood in Jessica's hair. Once Jessica disrobed, the nurse observed red marks and bruising to

Jessica's upper neck, red marks and bruising on her jaw line, scratches on her right cheek, bruising on her right eyelid and brow, scratches and bruising on her inside forearms and hands, bruises that appeared to be a handprint on the lower part of the left upper arm and back of the left arm, bruising on both shoulders, a bruise "like a rug burn" on her abdomen, and bruises on Jessica's left elbow, both shoulders, right forearm and lower part of the right upper arm, both hips, back, both legs, feet, ankle, and buttocks. The bruises to Jessica's arms, foot, right buttocks, and hip were the most pronounced, and the nurse observed that the bruises got worse as the day went on, indicating that the bruises were fresh. The nurse contacted a crisis worker due to Jessica's injuries.

{¶ 12} Jessica suffered a severe concussion, whiplash, a laceration on her head that required stitches, and a hairline fracture to the elbow. Jessica testified that she was in "excruciating" pain, and that her injuries resulted from the incident on March 6, 2013; she denied that she had bruises prior to that day.

{¶ 13} Kettering Police Officer Wendy Miller responded to Grandview Hospital on a domestic violence complaint and met with Jessica. Miller first observed the bruises to Jessica's hands, arms, and face, and asked Jessica if she could look at the other injuries. Miller observed that Jessica was in a lot of pain and had difficulty getting out of the hospital bed. Miller stated that Jessica appeared to be a "little bit confused," kept touching her head, and said that she was not sure if she had a concussion, but she was having a hard time remembering the order of events. Officer Miller also noticed the bruising get worse during the course of her interaction with Jessica.

{¶ 14} Officer Miller went to Jessica and Kesting's apartment. She noticed a

smear of blood on the wall by a doorframe near the galley kitchen and some blood underneath a countertop in the kitchen right across from the doorframe. Miller also located clothing that Jessica said she had been wearing at the time of the incident; there appeared to be dried blood on that clothing. Miller later asked Kesting if she could photograph him. He said he "would rather not," but indicated that he had no injuries. Officer Miller did take photographs of Rebecca Kesting's face, which had scratches, bruises, and a bite wound. Officer Miller also photographed a bruise on Rebecca's left arm.

{¶ 15} Defense counsel thoroughly cross-examined the State's witnesses, including Jessica, and presented the testimony of both Rebecca and Kesting in Kesting's defense. Kesting testified that Jessica had drunk a substantial amout of vodka, combined with Xanax, on the evening of March 6, 2013. He described how she "passed out" on their daughter's small bed and fell off, had fallen into the bathtub when she went into the bathroom, and later fell while going down the stairs to the laundry room. Kesting described Jessica as argumentative and combative, whereas he attempted to be a calming influence on her and their daughter. Kesting testified that he called his mother and asked her to come to the apartment, because Jessica and Rebecca had spent time together and he thought Rebecca could calm Jessica down.

{¶ 16} Rebecca testified that she came to the apartment when Kesting called and heard Jessica cursing and screaming inside. Upon entering, she saw that Jessica's gait was unsteady, and she believed Jessica was intoxicated. Rebecca asked Jessica why she would jeopardize the apartment and her daughter's safety. Jessica responded violently, hitting Rebecca in the face. A series of physical altercations ensued (Rebecca reported three fights,

Kesting reported four), with short breaks in between. Rebecca and Kesting testified that Jessica pulled Rebecca's hair, pushed her, shoved her, and punched her. Rebecca stated that Jessica tried to break her thumb. During one altercation, Jessica bit Rebecca on the forehead. Rebecca described Jessica as "very aggressive" and testified that Jessica was the instigator of all of the altercations.

{¶ 17} Both Rebecca and Kesting testified that Kesting was taking care of his daughter and did not participate in the altercations. Kesting tried to stop the fights; on one occasion, he faked a panic attack and, after Jessica bit his mother, he physically separated the women. Rebecca stated that Kesting grabbed Jessica "by the arm and he pulled her hair, he lifted her – he lifted her off of me and she fell backwards into the living room." Kesting testified that he grabbed Jessica's arm and pulled her off his mother after the second altercation and, after another altercation, he put his foot on Jessica "as a wedge" and pulled his mother away. Kesting stated that he later separated the women by pushing their chests apart. Rebecca stated that she would have called the police, but the apartment's phone was not working.

{¶ 18} Kesting had a daughter from a prior relationship, and he also called the mother of that daughter as a witness. She testified that Jessica had stayed with her for approximately six weeks around June 2012, that she saw Jessica every day during that period, and that she noticed that Jessica "pretty much always had bruises on her." The former girlfriend testified that she had formed an opinion about Jessica's truthfulness and she "[doesn't] believe a word she [Jessica] says." On cross-examination, the former girlfriend admitted that she had been the complainant in Kesting's two prior domestic

violence cases.

{¶ 19} On appeal, Kesting asserts that the jury's findings were against the manifest weight of the evidence, because the weight of the evidence established that the physical altercations were between Jessica and Rebecca, not between Jessica and Kesting. He states that, "[g]iven the degree of the injuries in this case to the two clear participants, the testimony of all of the witnesses and the complete lack of injuries to appellant," the jury lost its way in finding him guilty.

{¶ 20} It was undisputed that Jessica and Rebecca were involved in physical altercations, although Jessica claimed that Kesting and Rebecca were the instigators, whereas Kesting and Rebecca testified that Jessica was the aggressor. Kesting admitted to touching Jessica, but he claimed he did so only to separate the women; he denied hitting, kicking, or otherwise assaulting Jessica. In contrast, Jessica claimed that specific injuries were caused by Kesting's assaulting her. The credibility of the witnesses and the weight to be given to their testimony were matters for the jury, as the trier of fact, to determine. Considering all of the evidence presented at trial, the jury did not lose its way simply because it chose to believe the version of events presented by the State.

{¶ 21} Kesting's fourth assignment of error is overruled.

## II. Crim.R. 29 Motion

{¶ 22} Kesting's second assignment of error states: "The trial court erred in reserving ruling on Appellant's Criminal Rule 29 motion for acquittal." Kesting claims that the trial court did not properly address his Crim.R. 29 motion at the end of the State's case.

{¶ 23} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case.

{¶ 24} Kesting relies on the last sentence of Crim.R. 29(A), which requires the trial court to immediately rule on a motion for acquittal made at the conclusion of the State's case-in-chief. "The evident purpose behind this requirement is to avoid forcing a defendant, when the State has failed to meet its burden of proof in its case-in-chief, to present his own evidence, and thereby risk introducing incriminating evidence that might fill a gap in the State's proof, before obtaining the remedy of acquittal to which the defendant is entitled." *In re S.C.*, 2d Dist. Miami No. 2004-CA-14, 2004-Ohio-5800, ¶ 10.

{¶ 25} "If a trial court does fail to timely rule on the motion, it is harmless error *only if* the evidence which had been submitted at the time of the motion was sufficient to sustain a conviction. Moreover, the ruling must be made based only on the evidence presented during the state's case." (Emphasis in original; citations omitted.) *Miamisburg v. Turner*, 2d Dist. Montgomery No. 17928, 2000 WL 145390, *1 (Feb. 11, 2000). When reviewing whether the State has presented sufficient evidence to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096

(1997).

{¶ 26} After the State's last witness, the State notified the court in a sidebar discussion that it would rest subject to the admission of exhibits and that it understood that defense counsel would be making a Crim.R. 29 motion. The court asked counsel about their expectations for the rest of the day, and defense counsel indicated that he had one witness that he planned to call that day and two additional witnesses the following day. The court responded:

> THE COURT: Okay. You're making a Rule 29. You have argument on it. We can defer the argument until after we take this witness and then argue it after that, if that's okay with you. I mean I know there's plenty of other times you (indiscernible) he can raise it, and then get this witness out of the way rather than have the jury sit here.
>
> PROSECUTOR: Do you want us to go ahead and rest on the record in front of the jury?
>
> THE COURT: Uh-huh. And then –
>
> DEFENSE COUNSEL: And we wouldn't formally make our motion –
>
> THE COURT: You won't – before you make your motion, put your witness on. And I'll just ask you are you asking to reserve your rights, and that'll take care of it.
>
> DEFENSE COUNSEL: And so, would you like us to re-approach for my – to formally make that motion?
>
> THE COURT: Yeah.

DEFENSE COUNSEL: Okay.

THE COURT: Make a better record that way.

{¶ 27} The State then, in open court, announced that it was resting, subject to the admission of exhibits. Defense counsel immediately asked to approach. In this sidebar discussion, the following exchange occurred:

DEFENSE COUNSEL: I would move for an acquittal based on the State's failure to prove their case beyond a reasonable doubt. And would – Your Honor, I would like to defer the decision for arguments. I would not be opposed to that.

THE COURT: Well, let's put it this way. I will overrule that motion subject to further argument requested.

DEFENSE COUNSEL: Thank you, Your Honor.

PROSECUTOR: Very good, Judge. Thank you.

Following the sidebar, defense counsel called its first defense witness (Kesting's former girlfriend). The court replied, "Yeah. Subject to proceedings being now conducted, subject to the previous ruling of the Court to counsel as to the procedure we'll have here."

{¶ 28} The State asserts that the trial court committed no error in handling the Crim.R. 29(A) motion, because it did, in fact, address the motion by overruling it, subject to further argument. The State notes that Kesting renewed his motion at the close of all of the evidence and, after argument, that motion was denied.

{¶ 29} The trial court's initial discussion with counsel indicates that the trial court intended that the State would rest, defense counsel would reserve his rights, defense counsel

would present his witness and, after the jury was dismissed for the day, defense counsel would make his Crim.R. 29(A) motion with argument. However, immediately after the State rested, defense counsel moved for an acquittal under Crim.R. 29. The trial court immediately addressed that motion when it overruled it. The court's statement that its ruling was "subject to further argument requested" indicates that the court would entertain further argument on the motion at the end of the day and possibly reconsider its ruling.

{¶ 30} Defense counsel properly moved for a judgment of acquittal at the conclusion of the State's case, and the trial court properly did not reserve its ruling. And even if the trial court's procedure had been improper, the evidence presented by the State in its case-in-chief, when considered in the light most favorable to it, was sufficient to support Kesting's conviction; any error in the court's procedure would have been harmless.

{¶ 31}   Kesting's second assignment of error is overruled.

### III. Trial Court's Remark to Witness

{¶ 32} Kesting's third assignment of error states: "The trial court erred in expressing personal comments on the credibility of a witness denying Appellant his due process right to a fair trial."

{¶ 33} This assignment of error focuses on the trial court's admonishment of Rebecca Kesting to answer the questions before her and not to elaborate. Kesting claims that the trial court, in doing so, implied that Rebecca's testimony was not credible. The relevant exchange was as follows:

THE COURT: Okay. I would remind the witness that you are, of course,

trying to testify and be honest and truthful, at least that's what you're

supposed to be doing under your oath.  Do not get ahead of the question.

Answer the question that is asked of you and respond to it, it is not for you to

–

THE WITNESS: Elaborate.

THE COURT: Right.

THE WITNESS: Okay.

THE COURT: You just answer; if it's yes or no, that's [w]hat the answer is.

And something else, you can always explain your answer at a later moment,

but not right out of the chute.  Okay.  Thank you.

**{¶ 34}** "It is well-settled that a trial judge is not precluded from making comments during trial and, in fact, must do so at times to control the proceedings." *State v. Djuric*, 8th Dist. Cuyahoga No. 87745, 2007-Ohio-413, ¶ 14.  For example, trial courts should exercise reasonable control over the mode of interrogating witnesses.  Evid.R. 611(A).  "However, a trial judge should be cognizant of the influence his or her statements have over the jury and, therefore, a trial judge must remain impartial and avoid making comments that might influence the jury.  When a judge's comments express his or her opinion of the case or of a witness's credibility, prejudicial error results."  (Citations omitted.)  *Djuric* at ¶ 14; *see State ex rel. Wise v. Chand*, 21 Ohio St.2d 113, 256 N.E.2d 613 (1970), paragraphs three and four of the syllabus.

**{¶ 35}** In determining whether a judge's remarks were prejudicial, "courts will adhere to the following rules: (1) The burden of proof is placed upon the defendant to demonstrate prejudice, (2) it is presumed that the trial judge is in the best position to decide

when a breach is committed and what corrective measures are called for, (3) the remarks are to be considered in light of the circumstances under which they are made, (4) consideration is to be given to their possible effect upon the jury, and (5) to their possible impairment of the effectiveness of counsel." *State v. Wade*, 53 Ohio St.2d 182, 188, 373 N.E.2d 1244 (1978), vacated in part on other grounds, *Wade v. Ohio*, 438 U.S. 911, 98 S.Ct. 3138, 57 L.Ed.2d 1157 (1978).

{¶ 36} Kesting focuses on the trial court's comment that Rebecca Kesting was "trying to testify and be honest and truthful, at least that's what you're supposed to be doing under your oath." We find this statement ambiguous. It is possible that jurors could have construed this aside as an indication that the trial court did not believe Rebecca's testimony. On the other hand, jurors may have interpreted the statement simply as a recognition that witnesses are supposed to testify honestly and truthfully, and they may have understood that the trial court made the remark to avoid any suggestion that the court believed that Rebecca was, in fact, testifying truthfully. Defense counsel did not object to the trial court's remark.

{¶ 37} Under the circumstances presented, we find no indication that court's remark, even if erroneous, was prejudicial to Kesting. The court's comment came near the beginning of Rebecca's direct examination and the clear thrust of the court's statements to Rebecca was that she should answer the attorney's questions directly and without elaboration. There was nothing improper in the court's instruction that she answer questions directly and concisely. In addition, during jury instructions, the trial court instructed the jury that "[i]f, during the course of the trial, the Court said or did anything that you consider an indication of the Court's view on the facts, you are instructed to disregard

it." Any error in the trial court's comments was harmless.

{¶ 38} Kesting's third assignment of error is overruled.

### IV. Effective Assistance of Counsel

{¶ 39} Kesting's first assignment of error states: "Appellant was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments [to] the United States Constitution and Article I Section 10 of the Ohio Constitution."

{¶ 40} To reverse a conviction based on ineffective assistance of counsel, an appellant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland*, 466 U.S. at 688.

{¶ 41} First, Kesting contends that his trial counsel acted deficiently when he failed to object to Jessica's testimony that Kesting smoked marijuana in the residence around his child and to Jessica's mentioning that Kesting was the subject of a warrant at the time of the incident. Kesting argues that this information was not used to prove or disprove a particular fact and it was prejudicial to him.

{¶ 42} Evid.R. 404(B) provides: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive,

opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *" R.C. 2945.59 similarly permits the admission of other-acts evidence tending to show a defendant's "motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question." *State v. Kirkland*, Slip Opinion No. 2014-Ohio-1966, ¶ 68.

**{¶ 43}** Generally, evidence of other acts is admissible if (1) it is offered for a purpose other than to prove the character of a person in order to show action in conformity with that character, Evid.R. 404(B), (2) it is relevant when offered for that purpose, Evid.R. 401, and (3) the danger of unfair prejudice does not substantially outweigh its probative value, Evid.R. 403. *Kirkland* at ¶ 68, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶ 44}** Jessica testified that the physical abuse by Kesting grew out of an argument concerning Kesting's use of marijuana in the apartment and his lack of participation in the Children Services case plan. This testimony was relevant to explain how the physical confrontation started. Kesting's marijuana use was not emphasized at trial. Upon review of the trial as a whole, we find no basis to conclude that the danger of unfair prejudice from this brief mention of marijuana use substantially outweighed its probative value. Counsel was not ineffective in failing to object to this testimony.

**{¶ 45}** Similarly, Jessica briefly mentioned the warrant when describing what she heard upon fleeing to her bedroom on March 6, 2013. She testified that Kesting said that he should not call the police because he "had a warrant" and due to how Jessica and Rebecca looked. There was no testimony elaborating on the warrant. Defense counsel could have

reasonably elected not to object to this passing statement so as to not highlight the fact that Kesting had a warrant. Kesting has not demonstrated that counsel's failure to object was unreasonable and prejudicial.

{¶ 46} Next, Kesting claims that his defense counsel acted deficiently by failing to have a copy of Jessica and Kesting's case plan and a copy of an order from the juvenile court regarding their daughter for use during cross-examination.

{¶ 47} During the State's direct examination, Jessica testified that she did not leave the apartment, because Kesting and Rebecca "weren't going to let me take her [daughter] with me." Jessica explained that Kesting and his mother "were tag teaming me. Anytime I would go to get [my daughter] * * * it wasn't fun. It was scary." Jessica stated that she got her daughter and fled into her (Jessica's) bedroom. Defense counsel's first question to Jessica on cross-examination was "under your case pla[n] with Children Services, you weren't allowed to be alone with [your daughter], correct?" The State objected to the question on relevancy grounds.

{¶ 48} During the sidebar discussion regarding the objection, defense counsel stated that he asked the question because Jessica indicated that she was not allowed to leave the apartment with her daughter, but the case plan prohibited her from being alone with her daughter. The court asked if counsel had the order, stated that the court did not have a document indicating what Jessica's responsibilities under the case plan were, and questioned whether Jessica's authority to leave with her daughter affected Kesting's culpability in the force that he had used. Ultimately, the court told defense counsel to "move on."

{¶ 49} Based on the record, we cannot conclude that defense counsel was

ineffective in failing to have the case plan available for use at trial. The case plan is not part of the record and, consequently, we cannot determine whether the case plan would substantiate Kesting's assertion that it prohibited Jessica from being alone with her daughter. Even assuming that the case plan did substantiate that Jessica would have violated the plan had she left with her daughter, that evidence had limited bearing on whose version of events was more credible. At best, it would explain why Kesting and his mother would not let Jessica leave with her daughter; it would not contradict Jessica's testimony that they would not let her leave. Further, Jessica did not testify that she was assaulted as she was trying to leave the apartment or because she was trying to leave the apartment with her daughter and, even if she had, the terms of the case plan would not have provided a defense to the assault on Jessica. We cannot conclude that the outcome of Kesting's trial was affected by the unavailability of the case plan.

{¶ 50} Finally, Kesting claims that there were multiple instances during counsel's direct and cross-examinations where the trial court had to instruct counsel to lay a foundation for his question. We find no basis to conclude that counsel rendered ineffective assistance for this reason.

{¶ 51} Kesting's first assignment of error is overruled.

## V. Conclusion

{¶ 52} The trial court's judgment will be affirmed.

. . . . . . . . . .

WELBAUM, J., concurs.

DONOVAN, J., concurring:

{¶ 53} I write separately only to express my initial concern that the judge's statement "I would remind the witness that you are, of course, trying to testify and be honest and truthful, at least that's what your supposed to be doing under oath", may have been prejudicial to Kesting and a comment upon Rebecca Kesting's credibility. The majority characterized this statement as "ambiguous." After my independent review of the video record, I am satisfied that the statement's tone and delivery was quite innocuous and not a comment on the witness's credibility.

. . . . . . . . . .

Copies mailed to:

Matthew T. Crawford
Jay A. Adams
Hon. Barbara P. Gorman